### BRAY v. CITY COUNCIL OF FLORENCE.

1. CONSTITUTION—COURTS—LEGISLATURE—JOINT RESOLUTION.—Neither the legislature nor the Courts have the power to change the terms of a joint resolution so as to express the evident intent of the lawmaker; but where one portion of a proposed amendment to the Constitution, voted on by the people and properly ratified, is inoperative because the terms used in the joint resolution make it apply to the wrong section, that does not invalidate other portions of such amendment.

2. IBID.—REPEAL.—Where one section of a Constitution is so amended as to make it repugnant to another original section, such original section is thereby repealed.

3. MUNICIPALITIES—ELECTIONS OF.—REGISTRATION of municipal electors for a general municipal election is good for all special municipal elections between general municipal elections.

4. IBID.—CONSTITUTION—BONDED DEBTS—REPEAL.—AN ACT of the legislature limiting the amount of bonded debts of municipalities in the words of the Constitution, does not so operate after such limitations in the Constitution are removed by amendment.

Petition in the original jurisdiction of this Court for injunction against issuing municipal bonds, by Charles D. Bray against Wm. H. Malloy, mayor, and J. J. Brown and others, aldermen, constituting the city council of the city of Florence.

*Mr. S. W. G. Shipp,* for petitioner, cites: *Petitioner being resident taxpayer, has status here:* 59 S. C., 534. *Proposed issue carries bonded debt of city beyond constitutional limits:* Sec. 7, art. VIII., Con.; sec. 5, art. X., Con.; 60 S. C., 532. *No registration of voters before special election as to issuing bonds was had, and that invalidates the election:* Art. II. secs. 12 and 13, Con.; 61 S. C., 44. *The proposed issue is also in violation of legislative limitation of municipal indebtedness:* 22 Stat., 33, 88, 410, 453; Con., art. VIII., sec. 3; Cooley Con. Lim., 6 ed., 228, 227.

*Mr. Walter H. Wells,* contra, cites: *The constitutional*

_limitation of eight per cent. of municipal bonded debts has been repealed as to city of Florence:_ 23 Stat., 616; 39 S. C., 316; 95 N. Y., 554; 70 Ind., 241; 106 Ind., 415; 100 U. S., 239; 1 W. R., 94; 15 Johns., 380; 3 Cow., 99; 5 L. R. A., 345; 80 Ala., 379; 33 Md., 352; Potter-Dwarris Statute, p. 178; 21 S. C., 382; 3 How., 464; 12 Tex., 402; 37 L. R. A., 761; 6 Ency., 2 ed., 925 to 930; 109 N. Y., 564; 112 Ind., 69; 1 Idaho, 349; 94 Ill., 214. _Registration is not required for special municipal election:_ 61 S. C., 67. _The Constitutional limitation being removed by amendment, the statutory limitations likewise go:_ 87 Ill., 385; 67 Mo., 444; 16 L. R. A., 285; 4 Neb., 216; 4 Md., 189; 43 Ala., 420; 55 Ala., 322; 55 Col., 612.

_Mr. Geo. S. Legare,_ also contra, cites: _As to construction of amendments:_ 20 S. C., 361; 19 L. R. A., 123.

_Mr. M. H. Moore,_ also contra (oral argument).

October 7, 1901. PER CURIAM. This was an application to this Court, in the exercise of its original jurisdiction, for an injunction to restrain the city council of Florence from issuing the bonds mentioned in the petition. After due consideration this Court has reached the conclusion that the said city council has full power to issue the bonds in question.

It is, therefore, ordered, that the temporary injunction heretofore granted be dissolved and that the petition be dismissed.

The reasons for this conclusion will be given in an opinion hereafter to be filed.

October 25, 1901. The reasons for the above judgment are stated by

MR. JUSTICE GARY. This is a petition addressed to the Supreme Court, in the exercise of its original jurisdiction, to enjoin the respondents from issuing and delivering the

bonds therein mentioned.    The facts alleged in the petition
and admitted in the return of the respondents are thus briefly
stated by the petitioner's attorney: "The petitioner, Chas.
D. Bray, is a resident citizen and taxpayer of the city of
Florence, as shown by the tax books thereof, and is a quali-
fied elector therein.    The city of Florence is a municipal
corporation under the laws of the State, and the respondents
are the duly qualified mayor and aldermen, constituting the
city council.    The assessed value of the taxable property
in said city as shown by the tax books is $1,136,340, and
the present bonded indebtedness of the city is $53,500, being
a fraction less than five per cent. of the assessed value of the
taxable property therein.    Upon a petition duly filed by a
majority of the freeholders of the city, praying for a special
election to determine whether the city should issue coupon
bonds to the amount of $40,000 for the purpose of pur-
chasing, owning and operating a plant for water works in
said city, the city council by resolution ordered an election
to be held on June 4th, 1901, submitting to the qualified
electors of the city the following question: 'Shall the city
of Florence issue coupon bonds in the sum of $40,000, bear-
ing interest from date at a rate not to exceed six per cent.
per annum, payable in legal tender money of the United
States, forty years after date, with the privilege of redemp-
tion after twenty years from date, to meet cost of a plant for
water works to be owned by the city of Florence?'    Due
notice of the election was published for the time required by
law prior to holding said election.    No special registration
of the voters was had for this special election, but the regis-
tration of voters made for the general election held on May
2d, 1901, was used for the special election of June 4th.    A
majority of those voting at the special election voted in
favor of issuing said bonds, and the result of the election
was so declared by the city council.    The city council were
prepared to issue said bonds and to deliver the same over to
the board of commissioners of public works of the city who
were elected at said special election, but were restrained by

order of the Chief Justice. The issuance of $40,000 in bonds in addition to the present bonded indebtedness of the city would make said bonded indebtedness $93,500, being over eight per cent. of the assessed value of the taxable property in the city as shown by the tax books."

The petition alleges that the city council of the city of Florence was without authority to issue said bonds for the following reasons:

"(a) Because the issuance of $40,000 in bonds of said city in addition to the present bonded indebtedness of said city would make the bonded indebtedness of the city of Florence $93,500, being more than eight per centum of the present assessed value of the taxable property in said city, as appears from the tax books thereof, and the same thereby contravenes art. VIII. and sec. 7, and art. X., sec. 5, of the Constitution of this State, and also the *proviso* of sec. 1 of an act of the General Assembly, approved March 9th, 1896, entitled 'An act to authorize special elections in any incorporated city or town of this State for the purpose of issuing bonds for corporate purposes,' and the proviso of acts amended thereto, approved February 11th, 1897, and March 2d, 1897, the said provisos to said acts being as follows: *'Provided,* That the aggregate bonded indebtedness of any city or town shall never exceed eight per centum of the assessed value of the taxable property therein.'

"(b) Because there was no registration of the voters of said city provided for before said election, in accordance with art. II., sec. 12, of the Constitution of this State, but the registration of the voters registered for the general municipal election held on May 2d, 1901, was used for the election for bonds held on June 4th, 1901."

We will first consider the question whether the issuance of $40,000 in bonds in addition to the present bonded indebtedness of the city which would make the said bonded indebtedness more than eight per cent. of the value of the taxable property therein, would contravene art. VIII., sec. 7, and art. X., sec. 5, of the Constitution.

Sec. 7, art. VIII., of the Constitution provides that "no city or town in this State shall hereafter incur any bonded debt which including existing bonded indebtedness shall exceed eight per centum of the assessed value of the taxable property therein * * *." Sec. 5, art. X., of the Constitution contains the following provisions: "The bonded debt of any county, township, school district, municipal corporation or political division or subdivision of this State shall never exceed eight per centum of the assessed value of all the taxable property therein. And no county, township, municipal corporation or other political subdivision of this State shall hereafter be authorized to increase its bonded indebtedness if at the time of any proposed increase thereof the aggregate amount of its already existing bonded debt amounts to eight per centum of the value of all taxable property therein ascertained by the valuation for State taxation."

In 1900, the following joint resolution was adopted: "A joint resolution proposing to amend sec. 7, art. VIII., of the Constitution, relating to municipal bonded indebtedness.

"Section 1. *Be it enacted* by the General Assembly of the State of South Carolina, That the following amendment to sec. 7, of art. VIII., of the Constitution be agreed to: Add at the end thereof the following words: *Provided,* That the limitation imposed by this section and by sec. 5, art. IV., of this Constitution shall not apply to bonded indebtedness incurred by the cities of Columbia, Rock Hill, Charleston and Florence, where the proceeds of said bonds are applied solely for the purchase, establishment, maintenance or increase of water works plant or sewerage system; and by the city of Georgetown, when the proceeds of said bonds are applied solely for the purchase, establishment, maintenance or increase of water works plant or sewerage system, gas and electric light plants, where the entire revenue arising from the operation of such plants or systems shall be devoted solely and exclusively to the maintenance and operation of the same; and where the question of incurring such indebtedness is submitted to the freeholders and qualified voters of

such municipality as provided in the Constitution upon the question of other bonded indebtedness.

"Approved the 19th day of February, A. D. 1900."

In 1901, the following act was passed (23 Stat., 616) : "An act to ratify the amendment to sec. 7, art. VIII., of the Constitution, relating to municipal bonded indebtedness.

"Whereas the General Assembly did, by joint resolution, approved February 19, 1900, submit to the qualified electors of the State, at the general election next thereafter, an amendment to sec. 7, of art. VIII., of the Constitution of the State of South Carolina, by adding thereto a clause providing that the limitation imposed by said sec. 7, art. VIII., and by sec. 5, art. IV., of said Constitution (art. IV. in said joint resolution being inadvertently written for art. X., and hereinafter designated as art. IV., instead of art. X., so as to conform to the amendment as proposed and voted on), should not apply to bonded indebtedness incurred by the cities of Columbia, Rock Hill, Charleston, Florence and Georgetown, when the proceeds of said bonds are applied to certain purposes :

"And whereas a majority of the electors qualified to vote for members of the General Assembly, voting thereon at the general election next succeeding the passage of the said joint resolution, did vote in favor of said amendment.

"Section 1. *Be it enacted* by the General Assembly of the State of South Carolina, That the amendment to sec. 7, of art. VIII., submitted by the last General Assembly to the qualified electors of the State at the general election next thereafter, and upon which a majority of the electors qualified to vote for the members of the General Assembly, voting thereon at the last past general election, voted in favor thereof, be, and the same is hereby, ratified and made a part of the Constitution of the State of South Carolina; that the said amendment so made a part of the said Constitution is as follows: * * *

"Approved the 8th day of February, A. D. 1901."

Sec. 5, art. IV., of the Constitution only refers to the

office of lieutenant governor, and does not relate to bonded indebtedness. While it is manifest that the joint resolution of 1900 did not intend to refer to the last mentioned section, nevertheless it is beyond the power of the Court to declare that the intention was to insert sec. 5, of art. X., instead of said section. In *State ex rel. Atty. Gen.* v. *Hagood,* 13 S. C., 46, it is said: "It cannot be claimed that the Court can restate the language of an act to make it agree with some possible conclusion as to its intention, as affecting the subject matter of the act. The language declaring the intent of an act is as much beyond our power as the subject to which that declaration relates, and it would violate the principles of law to change the phraseology of a statute to make it conform to the assumed purpose of the lawgiver in any other way than as warranted by the rules of construction." Mr. Cooley, in his Constitutional Limitations, page 71, says: "That which the words declare is the meaning of the instrument, and neither courts nor legislatures have a right to add to or take away from the meaning." As sec. 5, of art. IV., does not impose a limitation upon the power of a municipality to contract a bonded debt, that portion of the joint resolution is inoperative and of no effect.

This, however, does not render null and void the other provisions of the joint resolution. It is true, the legislature, in the act of 1901, declares that art. IV., mentioned in the joint resolution, was inadvertently written for art. X., but the legislature had no greater power than the Court, to change the language of the joint resolution under which the amendment was submitted to the people, *after such election.* Sec. 1, art. XVI., of the Constitution, is as follows: "Section 1. Any amendment or amendments to this Constitution may be proposed in the Senate or House of Representatives. If the same be agreed to by two-thirds of the members elected to each house, such amendment or amendments shall be entered on the journals respectively, with the yeas and nays taken thereon, and the same shall be submitted to the qualified electors of the State at the next general election there-

after for representatives; and if a majority of the electors qualified to vote for members of the General Assembly, voting thereon, shall vote in favor of such amendment or amendments, and a majority of each branch of the next General Assembly shall, after such an election and before another, ratify the same amendment or amendments by yeas and nays, the same shall become part of the Constitution: *Provided,* That such amendment or amendments shall have been read three times, on three several days, in each house." After the amendment had been submitted to the people and a majority of the qualified electors had voted in favor of its adoption, the only action which the General Assembly had the power to take in regard to it was to determine whether it should be ratified in the manner provided by the Constitution.    Sec. 5, of art. X., must be construed as if it had not been mentioned in the act of 1901.

We are, therefore, confronted on the one hand with sec. 5, of art. X., providing that the bonded debt of a municipality shall never exceed eight per centum of the assessed value of all the taxable property therein, and on the other hand with the amendment as a *proviso* to sec. 7, of art. VIII., that the limitation imposed by the last mentioned section shall not apply to bonded indebtedness of the city of Florence, where the proceeds of said bonds are applied as therein required.    The amendment was adopted subsequently to sec. 5, of art. X., and as they are irreconcilably repugnant to each other, sec. 5, of art. X., must give place to the amendment in so far as it is inconsistent with it.    It is by necessary implication repealed to that extent. *People* v. *Angle,* 109 N. Y., 564, in which the Court says: "It is a primary rule of construction, that statutes must be so interpreted as to give effect to every part thereof, and leave each part some office to perform; and any construction which deprives any part of a statute of effect and meaning, when it is susceptible of another interpretation, is wholly without support from any authority.    It is also a familiar rule of construction, that if there be any repugnancy between

an amended statute or law and the original which cannot be so construed as to leave them both to stand and each have a legitimate office to perform, the original enactment must be deemed to have been repealed by the later expression of the legislative will (*Gilbert Elevated R. R. Co.* v. *Anderson,* 3 Abb. N. C., 434, 458; *Harrington* v. *Trustees of Rochester,* 10 Wend., 547). These rules apply as well to the interpretation of Constitutions as of statutes." This case is cited in the note to Cooley's Constitutional Limitations, page 73; also in the note to 6 Enc. of Law, page 92.

We will next consider whether the city council was without power to issue the bonds, by reason of the fact that there was no registration of the voters of said city, provided for, before said election—the registration of the voters registered for the general municipal election held on 2d May, 1901, being used for the election for bonds held on 4th June, 1901. Secs. 12 and 13, art. II., of the Constitution, are as follows:

"Sec. 12. Electors in municipal elections shall possess the qualifications and be subject to the disqualifications herein prescribed. The production of a certificate of registration from the registration officers of the county as an elector at a precinct included in the incorporated city or town in which the voter desires to vote, is declared a condition prerequisite to his obtaining a certificate of registration for municipal elections; and in addition he must have been a resident within the incorporated limits at least four months before the election, and have paid all taxes due and collectible for the preceding fiscal year. The General Assembly shall provide for the registration of all voters before each election in municipalities: *Provided,* That nothing herein contained shall apply to any municipal election which may be held prior to the general election of the year 1896.

"Sec. 13. In authorizing a special election in any incorporated city or town in this State for the purpose of bonding the same, the General Assembly shall prescribe as a condition precedent to the holding of said election a petition from

5—62

a majority of the freeholders of said city or town, as shown by its tax books, and at such elections all electors of such city or town who are duly qualified for voting under sec. 12 of this article, and who have paid all taxes, State, county and municipal, for the previous year, shall be allowed to vote; and the vote of the majority of those voting in said election shall be necessary to authorize the issue of said bonds."

The legislature passed an act (22 Stat., 33,) entitled "An act to provide for the registration of all electors in this State qualified to vote in State, county, municipal, congressional and presidential elections," approved 5 March, 1896, the 24th section of which is as follows: "Sec. 24. Ninety days before the holding of a regular election in any incorporated city or town in this State after the general election of 1896, the mayor or intendant thereof shall appoint one discreet individual who is a qualified elector of such municipality as supervisor of registration for such city or town, whose duty it shall be to register all qualified electors within the limits of the incorporated city or town. The names of all qualified electors of such municipality shall be entered in a book of registration, which at least one week before the election, and immediately after the holding of the election, shall be filed in the office of the clerk or recorder of such city or town, and shall be a public record open to the inspection of any citizen at all times. Such registration shall be used for all special elections in the municipality until ninety days preceding the next regular election." The legislature also passed an act (22 Stat., 88,) entitled "An act to authorize special elections in any incorporated city or town in this State for the purpose of issuing bonds for corporate purposes," which was approved 9th March, 1896, and contains the following provisions: "Section 1. * * * That it shall be the duty of the municipal authorities of any incorporated city or town of this State, upon the petition of a majority of the freeholders of said city or town as shown by its tax books, to order a special election in any such city or town for the purpose of issuing bonds for any corporate purpose

set forth in said petition: *Provided,* That the aggregate bonded indebtedness of any city or town shall never exceed eight per centum of the assessed value of the taxable property therein. Sec. 2. After the general election of the year 1896, such persons shall be entitled to vote at any such special election as are qualified under sec. 13, art. II., of the Constitution of 1895 of this State. * * *" When secs. 12 and 13, of art. II., are construed together, it is evident that it was not the intention to require registration of the voters before each *special* election in municipalities. The foregoing acts show that the legislature did not construe the Constitution as requiring registration before a special election could be held, and the construction of the Constitution, as shown by the acts, would be entitled to much consideration, if the question was doubtful, as many of the members of the legislature that passed those acts were also members of the Constitutional Convention. *State ex rel. Guergiun* v. *McAllister,* 28 L. R. A. (Texas), 523.

We will lastly consider whether the issuance of the bonds would be null and void by reason of the proviso in sec. 1 of the act of 9th March, 1896, hereinbefore mentioned, and the provisos in the acts amendatory thereof, approved 11th February, 1897, and March, 1897, which is as follows: *"Provided,* That the aggregate bonded indebtedness of any city or town shall never exceed eight per centum of the assessed value of the taxable property therein." It is contended by the petitioner that the legislature, having the power to limit the right of a municipality to incur a bonded indebtedness to any amount not prohibited by the Constitution, has imposed as a limitation that this indebtedness shall not exceed eight per centum of the assessed value of the taxable property therein; that although the General Assembly had the power, after the amendment to the Constitution was ratified, to have removed the limitation imposed by the proviso in said acts, it nevertheless has not taken such action, and that this limitation is still of force. It will be observed that the proviso is in the exact words of

the Constitution, and fixes no other limitation than that provided by the Constitution at the time said acts were passed. When these acts are construed with reference to the state of facts existing at the time of their passage, it will be seen that they permitted cities and towns to incur bonded debts, to the full extent mentioned in the Constitution. They did not have the effect of limiting the power of cities and towns to contract such debts. And would have been just as effectual if the provisos had been omitted. They in effect declared that the General Assembly was then satisfied with the limitation imposed by the Constitution, and the provisos were probably inserted out of the abundance of caution to prevent the acts from conflicting with the Constitution, and to impress upon the cities and towns that they must not attempt to contract bonded debts beyond constitutional limits. If, after the amendment was ratified, the General Assembly had desired to impose a limitation upon the power of the cities therein mentioned to incur bonded debts, otherwise than therein provided, it was necessary to enact a statute to that effect.

An order dismissing the petition, and stating that the reasons therefor would afterwards be embodied in an opinion, has already been filed.