15580

DORAN *ET AL.* v. ROBERTSON *ET AL.*

(27 S. E. (2d), 714)

436

*Mr. Augustine T. Smythe,* of Charleston, S. C., Counsel for Petitioners,

Mr. *John I. Cosgrove, Mr. Huger Sinkler, and Mr. Robert McC. Figg,* all of Charleston, S. C., Counsel for Respondents,

November 3, 1943.

MR. ASSOCIATE JUSTICE STUKES delivered the unanimous Opinion of the Court:

By proper permission of the Acting Chief Justice, petitioners filed their verified petition in the original jurisdiction of this court against the County Board of Commissioners of Charleston County, the members of which have appeared as respondents. They filed return and the matter was fully heard on the pleadings and the briefs and oral arguments of counsel at a recent term. There are no material issues of fact and those of law will be stated in the course of this opinion.

The supply act for Charleston County for the fiscal year beginning July 1, 1943 was Act No. 244 of the General Assembly of 1943, Act April 19, 1943, 43 Stat. at Large, 574. By section 25 (pages 606-7), the County Board of Commissioners were authorized to issue and sell bonds of the county not exceeding $350,000.00 and use the proceeds for various admitted county purposes and "for the construction of sewerage systems; * * * it being determined by the General Assembly that each and every one of said purposes is an ordinary county purpose of said county." Section 26 (page 608) of the Act purported to ratify and confirm a certain contract between the County Board and the V-Housing Corporation dated April 12, 1943, which it was said provided for the expenditure of county funds for "certain public improvements." V-Housing Corporation is a private business corporation.

Petitioners are citizens, residents and taxpayers of the county and contend that the provisions of the County Supply Act above mentioned are unconstitutional and therefore invalid for numerous reasons which need not now be fully stated, and attached as an exhibit to the petition is a copy of the V-Housing Corporation contract, referred to in the act.

In the latter agreement it is recited that the Housing Corporation is engaged in the construction of dwellings which it contemplates continuing "at the request of agencies and departments of the Federal Government" to relieve the housing problem in Charleston County resulting from the large number of workmen employed at the United States Navy Yard and other defense plants, and the county has determined "that it is necessary and proper to provide in connection therewith certain paving and sewerage facilities, not only to bring about the construction of such additional dwelling units, but also to render the same, and others heretofore constructed, accessible, and to safeguard and protect the health and safety of those who will occupy the same."

The corporation binds itself to construct, as soon as practicable under existing circumstances, in various sections of Charleston County, not less than twelve hundred new dwellings in accord with specifications of the Federal Housing Administration and costing not less than $3,200.00 each.

In turn, the county is bound "to provide street or roadway paving, or sewerage facilities, or both, as may in each instance be agreed upon by parties, in such sections of Charleston County as the dwelling units * * * may be located, and also in sections of said County in which the Corporation has heretofore, since January 1, 1942, constructed similar dwelling units."

The contract contains limitations, that paving and sewerage shall not be provided for less than twenty dwellings and shall only be constructed in such manner that not over thirty-five lineal feet, exclusive of outfalls and intersections, shall

be required per dwelling, no paving shall be on private property, but shall be of concrete or similar material, etc., and shall comply with the terms of section 6147 of the Code of Laws of 1942. It is further provided that the limit of the expenditures by the county shall be $350,000.00 and no new paving or sewerage construction shall be required to be commenced after the cessation of hostilities in the present war, except such construction as has theretofore been requested in writing by the corporation, which requested construction must be commenced and completed even after the cessation of hostilities, subject to the overall limitation upon the county's expenditure, $350,000.00. It is noted that the latter amount is the maximum bond issue authorized by the Act.

The return of the respondents controverts the legal conclusions of unconstitutionality alleged in the petition, raising issues which will be referred to in the following disposition of them, although perhaps not as perspicaciously as petitioners' counsel has presented them.

To the return was attached copy of the formal resolution of the County Board providing for the issuance and sale of $350,000.00 in serial bonds pursuant to the authority of section 25 of the Charleston County Supply Act of 1943, adverted to hereinabove, and providing for the application of the proceeds of sale to (a) the construction and improvement of roads and bridges in Charleston County (an undoubted constitutional purpose), and to (b) *the construction of sewerage systems where found to be needed for the protection of the public health in said county.* The emphasized purpose just stated is the principle bone of contention in the controversy although the right of the county authorities to pave the streets of the rural housing developments of the corporation is also sharply challenged.

The comprehensive argument of petitioners' counsel makes many separate points of constitutional attack, but as before indicated, it is not deemed necessary to

treat them in such detail although all will be considered. Rather, the form of respondents' brief will be followed. In it the first issue stated is: Are the provisions authorizing the bond issue and approving the contract properly included in the county supply act? That it was permissible to so include them is demonstrated by consideration of the recent authority of *DeLoach v. Scheper,* 188 S. C., 21, 198 S. E., 409. There it was held permissible for the Beaufort County Supply Act of 1938 to authorize the issuance of bonds by several of the townships of the county, acting together, where the title of the Act contained an appropriate reference to this object. And it was said that it was not a separate subject of legislation but related, as did the Act in the main, to the fiscal affairs of the county. The same may be appropriately said here. See also *Crouch v. Benet,* 198 S. C., 185, 17 S. E. (2d), 320, where provisions for issuance of bonds were upheld in the State General Appropriations Act of 1941.

The recent decisions just cited also answer petitioners' point that the Act violates Sec. 17 of Article 3 of the Constitution of 1895, in that it allegedly relates to more than one subject, not expressed in the title. But it has been seen that an annual appropriations act of a county may contain provisions for the issuance of bonds for county or subdivisional purposes, a related object which, therefore, comes within the subject of the Act when properly included in the title. And reference to the title of this Act (43 Stat. 574) shows that it was appropriate and complete in so far as the proposed bond issue is concerned.

Petitioner's argument that other items or provisions in the Act were not sufficiently referred to in the title, or possibly do not relate to the general subjects of the Act, to wit, the fiscal affairs of Charleston County, was answered by this court in the opinion in *DeLoach v. Scheper, supra* (188 S. C., 21, 198 S. E., 412), where it was said: "The sufficiency of them [referring to the 'other provisions' of the Act] does not concern us since their insertion cannot affect

the portions of the Statute now under discussion. If, for any reason, it can be said that those objects do not relate to the subject of the Act, or that, because of their insertion, the Act relates to more than one subject, those provisions might fall [fail?] but not the remaining parts of the Act. On that question, however, we express no opinion." Necessarily, a county supply act, especially of so large and diversified a county as Charleston, is something of an omnibus.

Petitioners urge a new angle of attack against the validity of the inclusion in a county supply act of a provision for the issuance of bonds, which does not seem to have been adjudicated, or even touched upon, in any prior decision of this court. It is that the Governor is thereby deprived in part of his power of veto for he cannot under the law exercise that prerogative concerning the bond issue alone, but must veto the whole act which, quoting petitioners' brief, "for practical purposes, cannot be done without serious consequences to the county." But the argument is made without reference to section 100 of the State Appropriations Act for 1943, Act April 16, 1943, 43 Stat. 420, which appears to provide that in the event of the failure of the enactment of an annual supply act for any county, that last enacted for a prior year shall be continued for another. Thus the General Assembly seems to have anticipated the possibility suggested by petitioners and to have effectively guarded against the "serious consequences" feared. Here, too, the fact is that the Governor approved the Act without recorded protest.

It is pointed out in argument that similar objection to the inclusion of bond issue provisions in the State Appropriations Act is not applicable because of section 23 of article IV of the Constitution which empowers the Governor to veto any item of that Act without impairing the validity of the other items, so that the authority of *Crouch v. Benet, supra,* is not applicable; but this point

has no reference to the similar authority of *DeLoach v. Scheper,* also *supra,* because it did not involve bond issue provisions in a county supply act. Furthermore, the deprivation (if it be so called) of the Governor of his power to veto a bond issue plan without his veto of the whole county supply act is not an invasion (Art. I, sec. 14, Const. of 1895) of the powers of the executive department by the legislative, as intimated in argument, for the simple but sufficient reason that under all of the authorities brought to our attention, the constitutional authority of the executive to veto is in the nature of a legislative power. 59 C. J., 575, Statutes, 101, and cases cited in footnote. 25 R. C. L., 887. Moreover, it may be added that this objection of petitioners goes to all acts of the General Assembly except those making appropriations from the State treasury. None other may be vetoed in part.

Is the Act a special law where a general law is applicable? Petitioners submit that the provisions of the Charleston County Supply Act under attack contravene section 34 of artcile III, subsection IX, of the Constitution which provides: "where a general law can be made applicable, no special law shall be enacted." And they urge that a general law was in fact in effect at the time of the passage of the act under review. They refer to Act March 17, No. 723 of the Acts of 1942, 42 Stat. 1693, which provides for the creation of paving districts, etc., in any county containing a city of a population of more than 70,000, which is Charleston. But upon consideration of the argument we think it without merit and that it is sufficient to cite only *Duke Power Co. v. Bell,* 156 S. C., 299, 152 S. E., 865, 873, in which legislation affecting less than all of the counties withstood similar constitutional attack for the reasons indicated in the following quotation from the opinion of the court: "Since, as was said by the Court in *Murph v. Landrum,* 76 S. C., 21, 56 S. E., 850, 'each county in the

state is a separate taxing district, and has public and corporate purposes to be accomplished by means of taxation limited alone to citizens or property within its territory,' it is patent that a law which is special in the sense that it imposes a tax, or grants an exemption, limited in application and incidence to persons or property within a certain county does not contravene the provisions of section 34 of article 3. That is so not only from the very nature of the matter to be dealt with but by virtue of the provisions of section 11, article 7 [of the constitution], expressly empowering the General Assembly to 'make special provision for municipal government.' "

The Charleston County Supply Act of 1943 was the last legislative word on the subject and, if otherwise valid, superseded the Act of 1942 if and to the extent in conflict, although it was literally a special law; it was nevertheless not in conflict with the Constitution on that account.

The challenge of the constitutionality of the Act and the validity of the resolution of the County Board, in so far as they propose to spend the proceeds of the intended bond issue for the construction of a sewerage system or systems to accommodate the homes to be built, and heretofore built, by the Housing Corporation is a serious one. The problem is approached in full realization of the time-honored and universal rule that a court will not declare an act of the Legislature, a coordinate branch of the government, to be violative of the fundamental law unless there can be no reasonable doubt of the necessity of the conclusion.

The fact that the Legislature declared in the Act under review that the construction of sewers in rural districts is a county purpose, is important but not conclusive. It has been given weight in the consideration of the question, but, as has been pointed out heretofore by this court, if the legislative finding and declaration foreclosed the question, there could be no effective constitutional con-

trol. The Legislature cannot finally determine the limits of its power under the Constitution; that is a fundamental function of the courts. *Gentry v. Taylor, infra.* But it is so high a prerogative that it should be exercised with utmost care and circumspection.

The pertinent portion of the Constitution is the following quoted part of section 6, article X : "The General Assembly shall not have power to authorize any county or township to levy a tax or issue bonds for any purpose except for educational purposes, to build and repair public roads, buildings and bridges, to maintain and support prisoners, pay jurors, County officers, and for litigation, quarantine and court expenses and for ordinary County purposes, to support paupers, and pay past indebtedness."

It is noted that the inhibition against taxes and bond issues is plain and there is little or no difficulty in determining the meaning of the words prescribing the exceptions, except possibly "ordinary County purposes." In close connection with respondents' contention that sewerage comes within the term "ordinary county purposes" it is their argument that such improvement is also within the contemplation of section 5 of the same article X of the Constitution whereby corporate authorities of counties "may be vested with power to assess and collect taxes for corporate purposes." But no argument need be advanced to maintain the assertion that certainly when the Constitution was written and adopted in 1895, sewerage systems were unknown in rural communities and could not have been in contemplation of the framers when they used the words "ordinary" and "corporate" in describing county purposes for which taxes may be levied and bonds may be issued. Respondents' other reference to the Constitution for comfort to their contention, article VII, section 11, the authorization to the General Assembly to "make special provision for municipal government," etc., is equally inapplicable. It contains no qualification

of the ban of section 6 of article X against taxes and bond issues for other than the stated objects and "ordinary County purposes." "Waterworks systems" were authorized by the Constitution for cities and towns. Article VIII, section 5.

Late decisions of this court leave no doubt of the correctness of the foregoing conclusions. In *Gentry v. Taylor*, 1939, 192 S. C., 145, 5 S. E. (2d), 857, an airport was held not to be an ordinary county purpose and the definitions of the term found in that decision make it unnecessary to now deal with it at length. Afterward (1941) it was said in *Benjamin v. Housing Authority of Darlington County*, 198 S. C., 79 15 S. E. (2d), 737, 739, in conclusion of the opinion: "Of course, if the County of Darlington were responsible for the payment of any portion of the contemplated bond issue, or if it were in contemplation that a tax be levied in said County, to pay any portion of the cost or maintenance of this project [rural housing], it would be in violation of Article X, Section 6, of the Constitution."

Respondents strongly urge that the construction by the county of sewerage facilities in congested unincorporated areas is necessary in the protection of health and is thereby rendered an "ordinary county purpose." In that connection reference is had to the case of *Rutledge v. Greater Greenville Sewer Dist.*, 139 S. C., 188, 137 S. E., 597, 600, in which was upheld the creation by the Legislature of certain territory within a county into a municipal corporation known as a sewer district with power to issue bonds, etc. The crux of the decision was stated in the following sentence of the opinion: "Obviously then the Legislature had the authority to create Greater Greenville sewer district and authorize the levy of taxes therein based upon the special benefits received by the property owners therein." That reasoning is patently not pertinent to the present problem because it cannot logically be said that the construction and operation of sewerage systems in the com-

paratively small sections of the whole large territory of the County of Charleston in which the V-Housing Corporation may construct houses for rent or sale would be of benefit to the whole. Likewise the argument that because the operation of public hospitals by counties has been considered to be within the power of the latter under the Constitution is without merit. It has been held that they are expressly authorized by another provision, article XII, section 3, and therefore do not come within the tax and bond inhibition of section 6 of article X. *Law v. City of Spartanburg,* 148 S. C., 229, 146 S. E., 12. And in *Battle v. Willcox,* 128 S. C., 500, 122 S. E., 516, the erection of a hospital from the proceeds of a township bond issue was approved as expressly within the terms of section 6, article X, "to build * * * public * * * buildings * * *."

Not overlooked in the consideration of the powers of a county under the Constitution is the important decision in *Park v. Greenwood County,* 174 S. C., 35, 176 S. E., 870, in which it was held that a county might construct and operate a hyrdo-electric plant, but no question was there made, uppermost here, that there was a violation of section 6, Article X of the Constitution of 1895 by the intended issuance of bonds or levy of taxes for the purpose. In that interesting case it was expressly found that no bond or obligation of the county in the constitutional sense, was involved, for the cost, principal and interest, was payable solely from revenues to be derived from the operation. The decision, therefore, merely involved the power of the county to pursue the purpose and did not relate to bonds or taxes, referred to in the prohibition against counties in the section of the Constitution here invoked.

It is not amiss to add (repeating in part the opinion in *Gentry v. Taylor, supra*) that the problem presented by this litigation is not at all like that presented in the case of Park, just referred to, or in similar cases, among them *Cathcart v. City of Columbia,* 170 S. C., 362, 170 S. E., 435 (the latter

concerning, however, as indicated, a city), which involved no expenditure of tax levies or of the proceeds of the sale of bonds, but relate to so-called "revenue bonds" and self-liquidating projects"; while the important factor in the consideration of the case before us is the proposal to issue ordinary bonds, general obligations of the county, payable from *ad valorem* taxes, and use the proceeds for purposes not within the contemplation of the Constitution for a county, in fact in fatal collision with the plain provisions of section 6, article X.

In reaching the decision indicated the court has not been unmindful of the praiseworthy intention of the General Assembly and of the Commissioners of Charleston County, to cooperate in relieving the present housing shortage resulting from the influx of workers at the Navy Yard and other defense industries, occasioned by the present wars, but it is necessary under our form of government that constitutional restrictions be observed and enforced in proper cases. The remedy, if desired by the people, would seem to be amendment of that document, the manner and means of which it, itself, prescribes.

The foregoing conclusion necessitates the allowance in large part of the relief sought by the petitioners; the performance by the county of its proposed contract with the Housing Corporation must be enjoined; but petitioners have failed to show any constitutional barrier to the issuance and sale by the county authorities of the bonds authorized by section 25 of the Charleston County Supply Act of 1943, 43 Stat. 606-7, and the use of the proceeds of the sale for county purposes within the constitutional provisions which have been fully discussed. No particular reference has been made to the "street or roadway paving" contemplated in the attempted agreement; it is assumed that such plan will fall with the purported contract. Consideration demonstrates the difficulty which would face

a court undertaking to define the jurisdiction of a county board "to build and repair public roads" (Const. art. X, sec. 6). Almost, if not quite, necessarily such is left to the sound discretion of the county governing authorities acting under and in accord with the Constitution and applicable statutes and it will not be undertaken here, in the absence of a clearcut controversy, to make any further adjudication upon that subject.

The judgment of the court is:

(1) That the prayer of petitioners for an injunction against the issuance and sale of the county bonds authorized in section 25 of the Charleston County Supply Act of 1943, 43 Stat. 606-7, is refused.

(2) That the respondents herein, the members of the County Board of Commissioners of Charleston County, be, and they hereby are, permanently restrained and enjoined from compliance with the purported contract with V-Housing Corporation, dated April 12, 1943, and referred to in section 26 of said Act, 43 Stat. 608, and from using any of the proceeds of any sale of the bond issue aforementioned or any other county tax or bond funds for the construction of a sewerage system or systems.

(3) That the other sections, provisions and items of said Charleston County Supply Act of 1943, 43 Stat. 574, are unaffected by this judgment and injunction.

Petition granted in part, refused in part.

MESSRS. ASSOCIATE JUSTICES BAKER and FISHBURNE, and CIRCUIT JUDGE T. S. SEASE, ACTING ASSOCIATE JUSTICE, concur.

CIRCUIT JUDGE E. H. HENDERSON, ACTING ASSOCIATE JUSTICE, disqualified.