16361

EVATTE v. CASS, MAYOR, *ET AL.*

(59 S. E. (2d) 638)

*Mr. J. Wiley Brown,* of Greenville, *for Appellant,*

*Messrs. Wesley M. Walker,* of Greenville, and *Sinkler, Gibbs & Simons,* of Charleston, *for Respondents,*

May 23, 1950.

OXNER, Justice.

This action was brought by a freeholder and taxpayer of the City of Greenville to enjoin the corporate authorities thereof from issuing general obligation bonds of the City of Greenville in the sum of $225,000.00, for the purpose of improving and extending its municipal airport facilities. The case comes before us on an appeal from an order sustaining a demurrer to the complaint.

It is first contended that the purpose for which the proceeds of the bonds are to be expended is neither a public purpose within the contemplation of Article 8, Section 3 of the Constitution, nor a corporate purpose within the contemplation of Article 8, Section 6 and Article 10, Section 5.

Although under the Uniform Airports Act of 1937, Sections 7112-31 to 7112-42, inclusive, of the 1942 Code, municipalities, counties and other political subdivisions are authorized to use public funds for the construction, maintenance and operation of airports, and no doubt some of

them have done so, the power of a municipality to levy a tax or issue bonds for this purpose has never been decided by this Court. It was held in *Gentry v. Taylor,* 192 S. C. 145, 5 S. E. (2d) 857, and *Parrott v. Gourdin et al.,* 205 S. C. 364, 32 S. E. (2d) 14, that a county was not authorized to levy a tax or issue bonds for the establishment of an airport because this was not among the purposes enumerated in Article 10, Section 6 of the Constitution for which a county may be authorized to levy taxes. Since these decisions were rendered, this section of the Constitution was amended so as to empower the General Assembly to authorize a county or township to levy a tax or issue bonds for this purpose. Act No. 12 of the Acts of 1945, 44 St. at L. 10.

The limitation imposed by Article 10, Section 6 does not apply to municipalities. The sole question here is whether the proposed expenditure is for a public and corporate purpose. This question was suggested but not decided in the two cases above mentioned. As pointed out in *Parrott v. Gourdin et al., supra,* and *Powell et al. v. Thomas et al.,* 214 S. C. 376, 52 S. E. (2d) 782, a proposed expenditure may be for a public or a corporate purpose and yet not be among the purposes enumerated in Article 10, Section 6, for which the General Assembly is empowered to authorize a county to levy a tax or issue bonds.

In *Parrott v. Gourdin et al., supra,* we had occasion to observe: "With the development of aviation, the Courts of many jurisdictions in recent years have been called upon to determine whether the establishment and maintenance of a public airport is a corporate purpose and they appear to hold rather uniformly that such expenditure does constitute a corporate purpose." [205 S. C. 364, 32 S. E. (2d) 16.] Numerous decisions from other jurisdictions holding that the use of public funds for the construction, maintenance and operation of a municipal ariport is for a public purpose are collected in annotations in 62 A. L. R. 777, 69 A. L. R. 325, 83 A. L. R. 345, 99 A. L. R.

182, and 161 A. L. R. 733. These annotations disclose that it has been held without exception that the establisrment of an airport is for a "public purpose" within the meaning of constitutional provisions restricting the power of taxation to such purpose. After mature consideration, we think the conclusion reached in these decisions is sound.

Our attention is called to the fact that in 1944 the Constitution, Art. 8, § 7, was amended so as to authorize the City of Orangeburg to issue bonds for the purpose of establishing and maintaining an airport. 43 St. at L. 2321. In *Brailsford v. Walker, Mayor et al.,* 205 S. C. 228, 31 S. E. (2d) 385, bonds issued for this purpose by the City of Orangeburg were upheld under this amendment. It is argued that in proposing and ratifying said amendment, the General Assembly evidently thought that in the absence of an amendment to the Constitution, a municipality was not empowered to expend public funds for establishing and maintaining an airport. We do not know what conclusion the General Assembly reached. That body may have inserted the provision relating to airports from a superabundance of caution. But in any event, the final responsibility of interpreting the Constitution rests upon this Court.

It is next contended that if the bonds are held to be valid, the proceeds therefrom may be expended only in improving and extending the Greenville Municipal Airport located near the Greenville-Laurens Highway. It is alleged in the complaint that the corporate authorities of the City intend to use all or a part of said funds on an airfield, commonly known as the Greenville Army Air Base, located several miles from the site of the existing Greenville Municipal Airport. Appellant seeks to enjoin the expenditure of the funds for the latter purpose on the ground that the petition of the freeholders upon which the election was held contemplated only the improvement and extension of the existing airport near the Greenville-Laurens Highway. The petition of the freeholders states that the proceeds

of the bonds "shall be expended for improvements and enlargements of the Greenville Municipal Airport." We think this language is sufficiently broad and comprehensive to include not only the airport existing when the petition was filed and the election held, but any other airport facilities subsequently acquired by the City of Greenville, even though not contiguous to the one then in existence.

The injunction sought is denied; the order sustaining the demurrer is affirmed; and the complaint is dismissed.

BAKER, C. J., and FISHBURNE, STUKES, and TAYLOR, JJ., concur.