19842

Everett A. KNIGHT, Individually, and representing all other tax-payers and property owners within Lower Dorchester Recreation District, Respondent, v. Tommy J. SALISBURY, et al., Appellants.

(206 S. E. (2d) 875)

*Karren LeCraft Henderson, Asst. Atty. Gen.,* of Columbia, *for Appellant, Daniel R. McLeod, as Attorney General,*

566

*Messrs. Sinkler Gibbs Simons & Guerard,* of Charleston, *for Appellants, members of the Lower Dorchester Recreation District Commission,*

*Messrs. Robert McC. Figg, Jr.,* of Columbia, and *Furman, Jenkins & Buist,* of North Charleston, *for Respondent,*

*Messrs. Sinkler Gibbs Simons & Guerard,* of Charleston, *for Appellants, members of the Lower Dorchester Recreation District Commission, in Reply.*

June 17, 1974.

LITTLEJOHN, Justice:

This action was instituted by the plaintiff, individually and representing the property owners and taxpayers of the Lower Dorchester Recreation District of Dorchester County, South Carolina, contesting the right of the defendants, constituting the Lower Dorchester Recreation District Commission, to issue general obligation bonds for recreational facilities within the said District, and challenging the constitutionality of Act No. 643 of the 1973 Session of the South Carolina General Assembly. The plaintiff also contests the constitutionality of Act No. 259 enacted at the 1973 Session of the South Carolina General Assembly, which created the Lower Dorchester Recreation District Commission.

The lower court held both statutes unconstitutional. The defendants, who are the Recreation District Commissioners and the Attorney General, have appealed.

At issue here is the power of the General Assembly to create a "special purpose" district in Dorchester County whose function it is to provide recreational facilities for a portion of Dorchester County. By Act No. 259, which became effective upon its approval by the Governor on May 31, 1973, that portion of Dorchester County coterminous with School District No. 2 was constituted the Lower Dorchester Recreation District (a body politic) and given the function of providing general public recreational facilities within the district.

The challenge here results from the provisions of new Article VIII of the State Constitution which became effective upon its ratification on March 7, 1973. It is to be noted that the challenged statutes were enacted subsequent to this date and the questions now presented relate to the power of the General Assembly to enact both statutes in light of the provisions found in Article VIII.

Article VIII reflects a serious effort upon the part of the electorate and the General Assembly to restore local government to the county level. Relevant sections, for the purposes of this case are as follows:

"Section 1. The powers possessed by all counties, cities, towns, and other political subdivisions at the effective date of this Constitution shall continue until changed in a manner provided by law."

"Section 7. The General Assembly shall provide by general law for the structure, organization, powers, duties, functions, and the responsibilities of counties, including the power to tax different areas at different rates of taxation related to the nature and level of governmental services provided. Alternate forms of government, not to exceed five, shall be established. No laws for a specific county shall be enacted and no county shall be exempted from the general laws or laws applicable to the selected alternative form of government."

"Section 17. The provisions of this Constitution and all laws concerning local government shall be liberally construed in their favor. Powers, duties, and responsibilities granted local government subdivisions by this Constitution and by law shall include those fairly implied and not prohibited by this Constitution."

The plaintiff contends that the provision of Section 7, which declares that there shall not be enacted "laws for a specific county," has done away with powers previously exercised by the General Assembly allowing it to create special purpose districts.

The defendants counter with two arguments, raising as many questions for this Court:

"1. Even though Section 7 might be construed to take away this plenary power, its provisions are inoperative until the General Assembly complies with the mandate imposed therein to provide 'by general law for the structure, organization, powers, etc. of counties.'

"2. The power of the General Assembly to 'carve out a district from the territory of the State for the accomplishment of some public purpose and levy taxes thereupon is inherent and not curtailed by the provisions of new Article VIII.' "

## QUESTION I.

It is, of course, a well settled rule of law that State Constitutions are not grants of power to the General Assembly but are restrictions upon what would otherwise be plenary power. *Shelor v. Pace,* 151 S. C. 99, 148 S. E. 726 (1929); *Evans v. Beattie,* 137 S. C. 496, 135 S. E. 538 (1926); cases collected, 6 South Carolina Digest Constitutional Law Key 26 (1952, Cum. Supp. 1973).

A constitution is not to be construed item by item, but must be harmonized. Notwithstanding, it is apparent that where the Constitution has been amended, the provisions of the amendment control in the event of a conflict with pre-existing provisions. *Bray v. City Council of Florence,* 62 S. C. 57, 39 S. E. 810 (1901).

Article VIII is a part of a draft of a new Constitution submitted by a special committee which was first established in 1966. While that committee did not have the benefit of the existing struggle over House reapportionment, it did, of course, have full knowledge of the reapportionment of the State Senate. The committee had this to say about Section 7 of Article VIII.

"Special county laws prohibited. The Committee recommends that all counties operate under the general county laws applying to the classes. This will prevent the passage of many local and special laws. Each county can be given the authority it needs by well-planned general and class laws. Of course, this restriction would demand that there be an active governing body in each county which would have general powers of local government similar to those now exercised by municipal councils." Final Report of the Committee to Make a Study of the South Carolina Constitution of 1895, p. 87 (1969).

The quest for home rule at the county level had begun during the decade of the 1940's with Act No. 764 of the 1948 Acts of the General Assembly providing for establishment of the County Council of Charleston County. This body was given all of the powers that could be vested in it under the Constitution as then written. Following reapportionment many other counties adopted this plan and at this writing there are perhaps 18 counties whose governments are patterned after the fashion of the Charleston County Council Act. These changes were prompted by the feeling that Columbia should not be the seat of county government, and that the General Assembly should devote its full attention to problems at the state level. It was against this background that Article VIII was written. It is clearly intended that home rule be given to the counties and that county government should function in the county seats rather than at the State Capitol. If the counties are to remain units of government, the power to function must exist at the county level. Quite obviously, the framers of Article VIII had this in mind.

It is argued that Section 7 is inoperative until the General Assembly obeys the mandate to enact general laws establishing the functions of the counties, and that meanwhile the General Assembly may function as it had prior to March 7, 1973. Accordingly, it is contended that since the General Assembly has not so far obeyed the mandate of Article VIII, the challenged Acts must be sustained. There are several reasons why such an argument cannot be accepted. In the first place, there is no method by which any court can mandamus the General Assembly to enact laws. Thus, there is no absolute assurance that the General Assembly will carry out the directive of Section 7 at any particular time. Accordingly, inactivity on the part of the General Assembly could permanently thwart and destroy Section 7. It is not reasonable to assume that the framers of Article VIII intended to give the General Assembly veto power over its effectiveness. Had they so intended, it would have been very easy

to insert in Section 7 a provision to the effect that until the General Assembly acted in obedience to the directive, it might continue to function as it had in the past. No such language appears and no such intent can be reasonably inferred. Section 1 of Article VIII contains a contrary intention. It is there specifically provided "[t]he powers possessed by all counties, cities, towns and other political subdivisions at the effective date of this Constitution shall continue until changed in a manner provided by law." Had the framers of Article VIII intended to extend legislative power, Section 1 would have been drafted in such fashion as to provide that the powers of the General Assembly in this area would likewise continue until the directive of Section 7 had been implemented. Construed together, Section 1 and Section 7 simply mean that existing political subdivisions should continue to function as authorized by law on March 7, 1973, when Article VIII was ratified.

It is clear that Section 7 does away with the necessity for creation by the General Assembly of the special purpose district within an existing county. Section 7 specifically directs the General Assembly to provide by general law a means by which the counties themselves may tax different areas at different rates of taxation on the basis of the nature and level of governmental services provided. Accordingly, if, when established, the county government of Dorchester County feels a need to provide recreational facilities in a specific area of that county, it may do so and thereupon levy a tax to pay the cost thereof. There is a sound reason for curtailing the power of the General Assembly to create special purpose districts within a county. If, despite the prohibition of laws for a specific county, the General Assembly may continue to carve a given county into special purpose districts, a frightful conflict would exist between the power of the General Assembly and the power of the county government. Each county could be carved into enumerable special districts. Commission or other agencies might be established for each, with each given the power to perform a function

intended to have been vested in the county government. Such a result could well be choatic and home rule intended by Section 7 would be frustrated in whole or in part since the result could well be that the governing body in each county contemplated by the draftsmen of Section 7 would have little or no power left. To point out the potential results of such a theory compels its rejection.

## QUESTION 2.

The plenary power of the General Assembly to act in any area unless prohibited by a constitutional provision has sustained the creation of the special purpose district in South Carolina. Section 5 of Article X, which provides that the corporate authorities of the counties, etc., may be vested with the power to collect taxes for the county, has been held not to limit their power. And, at least in the opinion of the late distinguished Justice Oxner, Section 11 of Article VII, which authorized the General Assembly to make special provision for municipal government, was the basis of sustaining certain classes of special purpose districts lying within counties. Cf. *Mills Mill v. Hawkins,* 232 S. C. 515, 103 S. E. (2d) 14 (1957).

The special purpose district has been employed for hospitals, recreational and other purposes. Whether they were sustained as a part of "the inherent power of the General Assembly" or authorized by Section 11 of Article VII, is unimportant. It is clear that Section 7 sought to put an end to this practice, at least insofar as it relates to special purpose districts within a given county. The effect of Section 7 upon the authority of the General Assembly to group counties into a special purpose district is not at issue here, nor is it necessary to consider it. Section 7 prohibits laws for a specific county.

What is the challenged Act here but a special law for Dorchester County? Section 7 does not destroy the function of the special purpose district in a county. On the contrary, it in effect empowers county governments to create special

purpose districts by giving them the power to tax on the basis of the governmental services provided. Historically the vast majority of special purpose districts in South Carolina were created in order to provide water or sewer services in areas within the county. This power is given to the counties by Section 16 of Article VIII. Accordingly, there is no longer a need for special state laws to create this type of district. The State Constitution, which until March 7, 1973 did not deny the plenary powers of the General Assembly in this area, has now been changed. Those plenary powers are now curtailed by the prohibition of special laws for a specific county. It is true that Article X (which relates to taxation) has not yet been rewritten, but it must be harmonized with Article VIII which is the latest expression of the electorate as to its will for constitutional provisions on this subject. This is not only true of Article X, but it is true of any other provision in the Constitution. Thus the preexisting power to enact special laws under Section 11 of Article VII must give way as being in conflict with Article VIII. It is argued that under our decisions, specifically *Doran v. Robertson,* 203 S. E. 434, 27 S. E. (2d) 714 (1943), counties could not by reason of Section 6 of Article X establish water or sewer systems. Article VIII, as already noted, expressly empowers counties to act in these areas. Quite obviously, these powers must exist despite conflicting provisions of Section 6 of Article X.

It is argued that refusal to uphold the challenged legislation will create a vacuum in government. This is simply not the case. Existing (but only existing) units may continue to function under Section 1 until the General Assembly acts under the mandate of Section 7.

The special legislative committees are already working in obedience to the mandate of Section 7. Once the General Assembly acts in keeping with this mandate, problems such as these will vanish. Quite obviously, county government will function at the county level in such a way that it may provide all necessary governmental services heretofore ef-

fected through the special purpose district created by the General Assembly.

We have not adopted the entire order of the trial judge verbatim, but we have concluded that he properly disposed of all issues and have in large measure utilized his reasoning and his language in disposing of the issues submitted to this Court. His order enjoining the defendants from issuing general obligation bonds pursuant to Act No. 643, and declaring both Act No. 643 and Act No. 259 of the Acts of the General Assembly for 1973 unconstitutional is hereby

Affirmed.

Moss, C. J. and Lewis, J., concur in result.

Bussey and Brailsford, JJ., dissent.

Lewis, Justice (concurring):

I concur in the result of the opinion of Justice Littlejohn, but reach it on different grounds.

New Article VIII, Section 7, requires that the General Assembly shall provide by general law for the structure, organization, powers, duties, functions, and the responsibilities of counties, including the power to tax different areas at different rates of taxation related to the nature and level of governmental services provided. This provision is, by the clear import of its language, immediately operative and imposes a present duty upon the General Assembly, so as to make applicable the general law which it directs *shall* be enacted.

Recreational facilities, a public purpose, could be provided for by Dorchester County in the Lower Dorchester area under the general law authorized and required in Article VIII, Section 7. The language of the mandate in Section 7 is certainly sufficiently broad to include the authority to empower counties to accomplish local improvements and provide governmental services, including recreational facilities, benefiting only parts of their area through the means of taxing the persons and property in such parts at different rates

related to the nature and level of such local improvements and services.

One effect of Article VIII, Section 7, and with which we are here only concerned, is simply to enlarge the functions of counties, so as to make it possible for them to provide those public services which have heretofore been provided by the General Assembly through the expedient of special purpose districts, thereby avoiding the vice of the county-wide levy for local benefit. As stated in respondent's brief, the purpose is clear that the county, with "the power to tax different areas at different rates of taxation related to the nature and level of governmental services provided," is intended to be the governmental authority to provide and administer such services in local areas after the effective date of new Article VIII, Section 7, and that the special purpose district, with a different board or commission in each instance, is no longer to be the cumbersome vehicle by which they can be provided.

Therefore, the special acts creating the Lower Dorchester Recreation District and authorizing the issuance of general obligation bonds contravene Article III, Section 34, Subdivision IX, which prohibits the enactment of a special law "where a general law can be made applicable."

Moss, C. J., concurs.

BUSSEY, Justice (dissenting) :

Being convinced that the judgment below was erroneous, I must dissent. The opinion of Mr. Justice LITTLEJOHN does not, in my view, state, answer or squarely deal with the serious questions raised in the briefs of the appellants.

Essentially the judgment below, and the opinion affirming the same, rest upon two basic premises or holdings, as follows:

1. Section 7 of Article 8 of the Constitution, as amended, provides authority for an established county government to levy taxes and issue bonds to provide for recreational facili-

ties, thus by implication repealing Section 6 of Article 10 of the Constitution, which as heretofore construed prevents a county from being authorized to levy taxes for such purposes and that further, by implication, the said Section 7 curtailed the long established and recognized plenary power of the General Assembly to create special purpose districts.

2. That the legislative acts under attack were both "laws for a specific county" in violation of Section 7, Article 8.

I most respectfully submit that, under well settled principles of constitutional law, neither of the premises on which the judgment below rests are sound. The first elementary proposition, here applicable, is that every presumption favors the constitutionality of legislative enactments and it is not the province of the court to declare such unconstitutional unless the invalidity thereof so clearly appears as to leave no room for reasonable doubt that such enactment violates the Constitution. See numerous cases collected in West's South Carolina Digest, Constitutional Law, Key 48.

In construing the Constitution it is the duty of the court to harmonize, as far as possible, any apparent conflicts in the Constitution so as to give effect to all provisions. See numerous cases collected in West's South Carolina Digest, Constitutional Law, Key 15.

Repeal, by implication, is not favored in the law and to bring about repeal by implication the two acts or provisions must be directly antagonistic and repugnant and there must be such a positive repugnancy as to admit of no other reasonable construction. *Bray v. City Council of Florence,* 62 S. C. 57, 39 S. E. 810; *State v. Alexander,* 14 Rich. 247; *State v. Hood,* 181 S. C. 488, 188 S. E. 134.

Article 10, Section 6 of the Constitution provides in pertinent part that "The General Assembly shall not have the power to authorize any county * * * to levy a tax or issue bonds for any purpose except for educational purposes, to build and repair public roads, building of bridges, to maintain and support prisoners, pay jurors, County officers,

and for litigation, quarantine and court expenses and for ordinary County purposes, to support paupers, and to pay past indebtedness." Under the quoted provision it is clear that counties cannot constitutionally levy taxes or issue bonds for recreational purposes. *Leonard v. Talbert*, 225 S. C. 559, 83 S. E. (2d) 201.

Article 8, Section 16 of the Constitution, as now amended, provides that a county may now acquire and operate certain utilities which have been heretofore impermissible under the provisions of Article 10, Section 6, but said Section 16 of Article 8 does not purport to give a county the right to acquire or operate facilities for recreational purposes.

Article 8, Section 7 contemplates the General Assembly providing counties with "the power to tax different areas at different rates of taxation related to the nature and level of governmental services provided." The holding of implied repeal of Article 10, Section 6 and the curtailment of the plenary power of the General Assembly to create special purpose districts is predicated solely upon the quoted language, but I find nothing therein which is directly antagonistic or repugnant to the provisions of Article 10, Section 6, or which evinces any intent to curtail the plenary power of the General Assembly with respect to special purpose districts. In my view, it is a perfectly simple matter to harmonize the quoted language with the provisions of Article 10, Section 6.

The quoted language was obviously needed to enable counties to acquire and operate the utilities expressly provided for in Section 16 of Article 8, one obvious purpose of the language being to allow counties to levy a higher rate of tax in the area of a county served by one of the utilities named in Section 16, and a lesser rate of taxation in those areas of the county not served by any such utility. If *contra* to the provisions of Article 10, Section 6 the framers of the amended Article 8 had intended the counties be vested with the power to tax for recreational facilities such intent could have readily been given effect by including recreational fa-

cilities among the other facilities mentioned in Article 8, Section 16 which counties are now expressly authorized to acquire. The quoted language from Section 7 of Article 8 is readily and easily harmonized with Article 10, Section 6 by construing the same to mean simply that counties shall have the power to tax different areas at different rates of taxation relative to the varying and constitutionally permissible governmental services provided. Such a construction does no violence to the quoted language or any other provisions of the Constitution.

Under settled principles I think it quite clear that the legislative acts here under attack are not "laws for a specific county" but are rather laws having relation to a different political sub-division which only incidentally happens to lie within the borders of one county. "Constitutional limitations upon the legislative power with respect to sub-divisions of the State are applicable only to the sub-divisions named in the respective inhibitory provisions of the Constitution." *Ashmore v. Greater Greenville Sewer District*, 211 S. C. 77, 44 S. E. (2d) 88. See also *Evatte v. Cass*, 217 S. C. 62, 59 S. E. (2d) 638; *Berry v. Milliken*, 234 S. C. 518, 109 S. E. (2d) 354. It is obvious that the legislation here deals with a sub-division of the state other than a county and hence the acts under attack are not "laws for a specific county" in violation of Section 7 of Article 8 of the Constitution.

\* \* \*

The opinion of Mr. Justice Lewis which would affirm the result of the judgment below, but upon a different basis, was written subsequently to the preparation of the foregoing dissent. The holding that Dorchester County can provide recreational facilities in the recreation district under the general law authorized and required by Article 8, Section 7, has to rest upon the basic, and I submit erroneous, premise that said section by implication repealed Article 10, Section 6, which as heretofore construed by this Court expressly pro-

hibits the General Assembly from authorizing a county to levy taxes for recreational purposes.

If Article 10, Section 6, had indeed been repealed, then it might be that the Acts under attack would be in violation of Article 3, Section 34, Subdivision IX, but, in the absence of such repeal, no such issue is presently before us.

I would reverse the judgment of the lower court.

BRAILSFORD, J., concurs.