20064

Ben R. MOYE, Appellant, v. Ben CAUGHMAN et al., Respondents

(217 S. E. (2d) 36)

*Messrs. Hunter & McWhirter,* of West Columbia, *for Appellant,* cite:

*Messrs. Sinkler, Gibbs, Simons & Guerard,* of Charleston, *for Respondents,* cite:

July 16, 1975.

NESS, Justice:

This case involves the constitutionality of Act No. 1181, enacted at the 1974 session of the South Carolina General Assembly, as modified by Act bearing ratification No. R4 enacted at the 1975 session of the General Assembly, which, among other things, changes the method of electing the boards of trustees of the school boards for Lexington County. The act was passed subsequent to the ratification in 1973 of amendments to the South Carolina Constitution. The appellant argues that the act violates one of those amendments, to wit, Article VIII, Section 7. The trial court ruled that matters appertaining to school districts were governed by Article XI, "Public Education", and that the act in question did not contravene the provisions of Article XI. We agree.

Section 7 of Article VIII provides:

"The General Assembly shall provide by general law for the structure, organization, powers, duties, functions, and the responsibilities of counties, including the power to tax

different areas at different rates of taxation related to the nature and level of governmental services provided. Alternate forms of government, not to exceed five, shall be established. No laws for a specific county shall be enacted and no county shall be exempted from the general laws or laws applicable to the selected alternative form of government."

In *Knight v. Salisbury,* 262 S. C. 565, 206 S. E. (2d) 875 (1974) the court interpreted Section 7 as prohibiting creation of a special purpose district for recreational purposes within Dorchester County. Mr. Justice Littlejohn, after observing that Article VIII was the product of years of struggle for home rule, noted that:

"There is a sound reason for curtailing the power of the General Assembly to create special purpose districts within a county. If, despite the prohibition of laws for a specific county, the General Assembly may continue to carve a given county into special purpose districts, a frightful conflict would exist between the power of the General Assembly and the power of the county government. Each county could be carved into enumerable special districts. Commission or other agencies might be established for each, with each given the power to perform a function intended to have been vested in the county government. Such a result could well be chaotic and home rule intended by Section 7 would be frustrated in whole or in part since the result could well be that the governing body in each county contemplated by the draftsmen of Section 7 would have little or no power left." *Id.* 572, 206 S. E. (2d) 878.

Mr. Justice Lewis concurring specially stated:

"New Article VIII, Section 7, requires that the General Assembly shall provide by general law for the structure, organization, powers, duties, functions, and the responsibilities of counties, including the power to tax different areas at different rates of taxation related to the nature and level of governmental services provided. This provision is, by the clear import of its language, immediately operative

and imposes a present duty upon the General Assembly, so as to make applicable the general law which it directs shall be enacted." *Id.* 575, 206 S. E. (2d) 879.

The trial judge correctly reasoned that the *Knight* case was not applicable to school districts. Creation of different provisions for school districts does not impinge upon the "home rule" amendment because public education is not the duty of the counties, but of the General Assembly. The General Assembly has not been mandated by any constitutional amendment to enact legislation to confer upon the counties the power to control the public school system. To the contrary, the command of new Article XI, Section 3, is "The General Assembly shall provide for the maintenance and support of a system of free public schools."

We take judicial notice of the fact that many school districts throughout the State are parts of two or three counties and, accordingly, it would be impossible for any one county to pass rules, regulations, or ordinances governing the school district.

The contrast between Article XI and Article VIII should be obvious. In Article XI the General Assembly is charged with the duty to provide for a system of public education, whereas, in Article VIII the General Assembly is required to confer powers upon the counties so that they may carry out local functions. Moreover, a reading of Article XI, which deals specifically with public education, as a whole, [1] in light of the historical background of public education in

---

[1] For instance, Article XI, Section 1, dealing with the election of the State Board of Education provides that election of board members is to be "by the legislative delegations of the several counties within each (judicial) circuit." The Committee to Make a Study of the South Carolina Constitution of 1895 recommended election by congressional district by a joint vote of the General Assembly, the express purpose of which was to give "the General Assembly control of the board." Final Report of the Committee to Make a Study of the South Carolina Constitution of 1895, pp. 98-99. The method of selection under Article XI evinces a desire to keep education within control of the General Assembly. Obviously, if the Article VIII provisions of home rule were to apply to education, Article XI would not build in a needless conflict of having the local legislative delegations, as opposed to local government delegations, elect the State Board of Education.

this State, and attempting to harmonize the entire Article and extract the impact of each section, it is clear that the provisions of Article VIII, which deal solely with local government, have no application to the matter currently before us.

The appellant in his brief did not raise the question of whether the act violates Article III, Section 34; therefore, the applicability of Section 34 is not before us. At oral argument the appellant suggested that the act is violative of Section 34. Without deciding the issue, the Court calls to the attention of the appellant the following cases. *State v. Huntley,* 167 S. C. 476, 166 S. E. 637 (1932) ; *McElveen v. Stokes,* 240 S. C. 1, 124 S. E. (2d) 592, 596 (1962) ; *Thorne v. Seabrook,* S. C., 216 S. E. (2d) 177 (1975). They indicate that Section 34 does not deal with matters specifically covered by Article XI.

Affirmed.

Moss, C. J., Lewis and Littlejohn, JJ., and Gregory, Acting Associate Justice, concur.