**HORRY COUNTY, a Political Subdivision of the State of South Carolina, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

**Civ. A. No. 77–1685.**

United States District Court, District of Columbia.

May 4, 1978.

Before WRIGHT, Circuit Judge, and HART and ROBINSON, District Judges.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Findings of Fact

1. Plaintiff Horry County is a political subdivision of the State of South Carolina, chartered by the State pursuant to Article VIII, Section 1, of the South Carolina Constitution to exercise the power and authority vested in political subdivisions by Section 4-1-10 of the Code of Laws of South Carolina, 1976, which include the power "to sue and be sued." Complaint, paragraph 1.[1]

2. For many years, including the period from November 1, 1964 through November 2, 1976, Horry County was administered by a Board of Commissioners composed of six members and a chairman. The Board was a non-legislating, non-taxing body which performed limited administrative functions. Complaint, paragraph 5; Defendant's Statement of Additional Facts as to Which There is No Genuine Issue, paragraph 3.

1. References to the Complaint are to those allegations which have been admitted in the Answer of the United States.

3. Prior to November 2, 1976 the six-member Board of Commissioners of Horry County was appointed by the Governor of South Carolina upon the recommendation of the county legislative delegation to the South Carolina General Assembly composed of the Senator and the three members of the House delegation. Section 14–2311 of the former Code of Laws of South Carolina (1962), as amended by Act No. 573 of the 1971 Joint Acts and Resolutions of the State of South Carolina. Complaint, paragraph 5.

4. The commissioners could be removed from office by the Governor upon the written request of a majority of the county legislative delegation. Section 14–2313 of the 1962 Code. Defendant's Statement of Additional Facts, paragraph 2.

5. The chairman of the Board of Commissioners of Horry County was separately elected at large by all citizens of Horry County eligible to vote in such elections pursuant to Section 14–2314 of the former Code of Laws of South Carolina (1962), as amended. Complaint, paragraph 4.

6. Prior to November 2, 1976 the governmental affairs of Horry County were regulated annually to a large extent by the so-called Horry County Supply Bills, acts that provided for operation of the government of Horry County and for levy of taxes to support governmental operations and which appropriated designated amounts of funds for specific county purposes. Defendant's Statement of Additional Facts, paragraph 3.

7. Prior to November 2, 1976 it was a well-known practice of the South Carolina General Assembly to enact local supply bills upon the agreement of the legislative delegation of the county involved. The Horry County legislative delegation performed the legislative, executive, and taxing functions for the county. Public funds in Horry County were disbursed pursuant to letters of authorization to the County Treasurer signed by the Senator and a majority of the members of the House delegation. Defendant's Statement of Additional Facts, paragraph 4.

8. Prior to November 2, 1976 all Horry County employees employed by the Board of Commissioners not involved in construction, repair, and maintenance of roads and bridges could be employed or discharged only with the written consent of the Senator and a majority of the county legislative delegation. Section 14–2318 of the 1962 Code, as amended. Defendant's Statement of Additional Facts, paragraph 5.

9. Prior to November 2, 1976 the chairman of the Horry County Board of Commissioners had direct charge of construction and repair of all roads and bridges in the county, the chain gang, and all road machines and hired help engaged in such work, subject to the general direction and authority of the Board. He had authority to employ and discharge any employee working on construction, repair, and maintenance of roads and bridges in the county, subject to approval of a majority of the Board. The chairman appointed all road overseers. Section 14–2318, as amended by 1964(53)2202, of 1962 Code. Defendant's Statement of Additional Facts, paragraph 6.

10. On May 13, 1975 the Circuit Court of South Carolina, Fifteenth Judicial Circuit, held in *Booth v. Grisson* that the form of government described in Findings 2 through 9 supra was in violation of the Constitution of South Carolina.

11. Home rule legislation was adopted in 1972, amending Article VIII of the South Carolina Constitution. As amended Article VIII provides in Section 7 that the General Assembly "shall provide by general law for the structure, organization, powers, duties, functions, and the responsibilities of counties * * *. Alternative forms of government, not to exceed five, shall be established." Complaint, paragraph 6.

12. Pursuant to Article VIII of the South Carolina Constitution, the General Assembly of South Carolina enacted Sections 14–3701 *et seq.* of the South Carolina Code of Laws, 1962, recodified as Sections 4–9–10 *et seq.* of the Code of Laws of South Carolina, 1976, providing for five alterna-

tive forms of elected county government. The General Assembly therein provided that "[e]ach county * * * may prior to July 1, 1976, conduct a referendum to determine the wishes of the qualified voters as to the form of government to be selected * * *." Complaint, paragraph 7.

13. On August 26, 1975 Horry County conducted a referendum to determine the form of government that should be established within the county and to determine the manner in which the members of the governing body of the county should be elected. Complaint, paragraph 8.

14. The voters in the referendum voted to adopt the council-administrator form of government for Horry County, with a council of eight members and a chairman, and to adopt the at large method of electing the members and chairman of the County Council. Complaint, paragraph 8.

15. The results of the Horry County referendum were reported to the General Assembly of the State of South Carolina, which thereupon enacted Act R546 of the 1976 General and Permanent Laws, ratifying the Horry County council-administrator form of government. Act R546 subsequently became law without the signature of the Governor of the State, pursuant to operation of state law.

16. Act R546 established the number of members, terms of office, and manner of electing the County Council of Horry County under the council-administrator form of government, and provided for at large election of the eight members and the separately elected chairman for terms of two years. Complaint, Exhibit 1.

17. Act R546 implemented home rule in Horry County by establishing the Horry County Council to conduct the taxation, legislative, and administrative affairs of Horry County that were formerly performed by the county's delegation to the South Carolina General Assembly, elected officials. Section 4–9–30, Code of Laws of South Carolina, 1976; Complaint, Exhibit 1.

18. Under the council-administrator form of government implemented by Act R546 the administrative functions formerly performed by the chairman of the County Board of Commissioners are performed by the administrator employed by the Council. Section 4–9–630. The separately elected chairman of the Council is assigned no powers or authority different from those of other Council members except that he may call special meetings on 24 hours notice. Section 4–9–110, Code of Laws of South Carolina, 1976. Defendant's Statement of Additional Facts, paragraph 7.

19. The office of chairman of the former Horry County Board of Commissioners ceased to exist with implementation of Act R546 and the office of chairman of the Horry County Council established by the Act is a distinctly different, new elective office. Defendant's Statement of Additional Facts, paragraph 7.

20. Each member of the House delegation was elected from a different electoral district within Horry County, as provided in Code of Laws of South Carolina, § 2–1–10.

21. Act R546 was submitted to the Attorney General for consideration under Section 5 of the Voting Rights Act and received on March 16, 1976. On May 17, 1976 the Attorney General requested additional information which was received on July 8, 1976. The information necessary to make the submission complete was received by the Attorney General on September 13, 1976. On November 12, 1976, within 60 days of completion of the Act R546 submission, the Attorney General interposed his objection to that Act pursuant to Section 5. Complaint, Exhibit 4 and paragraphs 10, 11, and 12; Defendant's Statement of Additional Facts, paragraph 10.

22. In response to this objection, on behalf of the Attorney General of the State of South Carolina Assistant Attorney General Treva G. Ashworth, in a letter dated November 19, 1976, requested that the Attorney General reconsider his decision to object to Act R546 and further requested that the County Attorney for Horry County have an opportunity to meet with representatives of the Justice Department to discuss additional information to be submitted concerning

Act R546. Complaint, Exhibit 3 and paragraph 13.

23. In a letter dated January 24, 1977 then Assistant Attorney General J. Stanley Pottinger informed the State that, after further review, "we have not found a basis for withdrawal of the Attorney General's objection. Therefore, on behalf of the Attorney General, I must decline to withdraw the objection." Complaint, paragraph 14 and Exhibit 4.

24. On November 2, 1976 eight members of the Horry County Council were elected in a general election, together with a chairman of the Council, from the county at large, in accordance with Act R546. Complaint, paragraph 14.

### Conclusions of Law

1. The State of South Carolina is subject to the special provisions of the Voting Rights Act of 1965. 30 *Fed.Reg.* 9897; *South Carolina v. Katzenbach*, 383 U.S. 301, 318, 86 S.Ct. 803, 15 L.Ed.2d 769 (1965).

2. In enacting the Voting Rights Act of 1965 Congress intended that "any state enactment which altered the election law of a covered state in even a minor way" would be subject to the pre-clearance requirements of Section 5 of the Act, 42 U.S.C. § 1973c. *Allen v. State Board of Elections*, 393 U.S. 544, 566, 89 S.Ct. 817, 832, 22 L.Ed.2d 1 (1969); *Perkins v. Matthews*, 400 U.S. 379, 387, 91 S.Ct. 431, 27 L.Ed.2d 476 (1971); *United States v. Board of Comm'rs of Sheffield*, —— U.S. ——, ——, 98 S.Ct. 965, 974–975, 55 L.Ed.2d 148 (1978).

3. Congress intended to subject all such legislation which affects voting in even a minor way to federal scrutiny "because the change [has] the potential to deny or dilute the rights conferred by § 4(a)" of the Act. *United States v. Board of Comm'rs of Sheffield, supra*, —— U.S. at ——, 98 S.Ct. at 975. *See also City of Richmond v. United States*, 422 U.S. 358, 95 S.Ct. 2296, 45 L.Ed.2d 245 (1975); *Beer v. United States*, 425 U.S. 130, 140–141, 96 S.Ct. 1357, 47 L.Ed.2d 629 (1976).

4. State enactments which require that a governing body which was formerly appointed would in the future be elected constitute a new voting standard, practice, and procedure within the state and if such new standard, practice, and procedure were not in force or effect as of November 1, 1964, such new standard, practice, and procedure is subject to the pre-clearance requirements of Section 5. *Allen v. State Board of Elections, supra; United States v. Board of Comm'rs of Sheffield, supra*; *Perkins v. Matthews, supra*; *City of Richmond v. United States, supra*.

5. Plaintiff would have this court draw a legal distinction between state enactments which change a present method of electing public officials and enactments which result in electing public officials who were formerly appointed. However, both types of enactments "have the potential to deny or dilute the rights conferred by § 4(a)" of the Voting Rights Act and thus both types of enactments must be subjected to the federal scrutiny set out in Section 5. *United States v. Board of Comm'rs of Sheffield, supra*, —— U.S. at ——, 98 S.Ct. at 975; *Beer v. United States, supra*.

6. An alternate reason for subjecting the new method of selecting the Horry County governing body to Section 5 pre-clearance is that the change involved reallocates governmental powers among elected officials voted upon by different constituencies. Such changes necessarily affect the voting rights of the citizens of Horry County, and must be subjected to Section 5 requirements. *Cf. Perkins v. Matthews, supra; Allen v. State Board of Elections, supra*.

7. The duties of the chairman of the former Horry County Board of Commissioners and those of the chairman of the Horry County Council under Act R546 are sufficiently different that in this respect also Act R546 constitutes a change in electoral practices requiring pre-clearance under Section 5 of the Voting Rights Act—unlike the two at large council seats in *Beer v. United States, supra*, 425 U.S. at 139, 96

S.Ct. 1357, which underwent no change at all.

■ 8. Act R546 of the General and Permanent Laws of the State of South Carolina established voting qualifications or prerequisites to voting, or standards, practices, or procedures with respect to voting, different from those in force or effect in Horry County, South Carolina on November 1, 1964 with respect to election of the members of the Horry County Council and its separately elected chairman.

9. Act R546 is subject to the pre-clearance requirements of Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c.

An order consistent with the foregoing Findings of Fact and Conclusions of Law has been entered today.

### ORDER

On consideration of the plaintiff's motion for summary judgment, the memoranda and affidavits submitted in support thereof and in opposition thereto, and the oral argument on the motion, and

In accordance with the findings of fact and conclusions of law filed this day, it is

ORDERED by the court that the plaintiff's motion for summary judgment is hereby denied, and it is

FURTHER ORDERED by the court, *sua sponte*, that partial summary judgment is hereby granted to the defendant, to the extent that the court hereby declares that Act R546 of the 1976 General and Permanent Laws of the State of South Carolina is subject to the preclearance requirements of Section 5 of the Voting Rights Act of 1965, as amended 42 U.S.C. § 1973c.

MEMORANDUM AND ORDER ON PLAINTIFF'S APPLICATION FOR INTERIM DECLARATION OF RIGHTS

On January 26, 1978 plaintiff Horry County filed an "application for interim declaration of rights" requesting a declaration that it was entitled to hold 1978 primary and general elections for County Council under Act R546 of the 1976 General and Permanent Laws of the State of South Carolina, although that Act has not yet been cleared under Section 5 of the Voting Rights Act. On April 5, 1978 Horry County filed a suggestion that the application for interim relief had become moot.

We conclude that the application for interim relief is not moot and that it should be denied on its merits.

■ On March 21, 1978 the three-judge District Court in the District of South Carolina which had heard *McCray v. Hucks*, Civil Action No. 76–2476, entered an order [1] allowing the 1978 elections, notwithstanding the Voting Rights Act, "subject to any contrary or modifying order that may be entered by any court in the District of Columbia Circuit having jurisdiction." We are troubled by this order because it was entered *ex parte* in an action which appears to have been dismissed on January 9, 1978 after having been abandoned by its plaintiffs several months earlier. But in any event, the South Carolina court's explicit recognition of our power to enter a superseding order prevents the issue from becoming moot in this court.

We have determined to enter an order enjoining the 1978 primary and general elections for Horry County Council pending final judgment in this case. Section 5 of the Voting Rights Act states plainly that an enactment subject to its provisions may not be enforced unless and until either this court or the Attorney General gives preclearance. The Supreme Court has recognized the equitable power of the District Courts to permit enforcement of such statutes *pendente lite* notwithstanding Section 5. *Georgia v. United States*, 411 U.S. 526, 541, 93 S.Ct. 1702, 36 L.Ed.2d 472 (1973); *Perkins v. Matthews*, 400 U.S. 379, 396–397, 91 S.Ct. 431, 27 L.Ed.2d 476 (1971).

---

1. This order is not to be confused with the prior order of the same court dated March 22, 1977. *See* note 2 *infra*.

But it has also made clear the equitable discretion of the courts *not* to permit use of electoral statutes not yet pre-cleared. In *Georgia v. United States, supra,* a three-judge District Court enjoined state legislative elections under a reapportionment plan which had not obtained pre-clearance. The Supreme Court granted a stay to allow the holding of one election under the challenged reapportionment plan. On the merits the Supreme Court then affirmed the injunction, validating the one election which had been held, but making clear that no new elections could be held until a reapportionment plan received pre-clearance under Section 5. *See also Moore v. Leflore County Board of Election Comm'rs,* 351 F.Supp. 848 (N.D. Miss. 1971) (three-judge court).

We do likewise. The council presently in office was elected in 1976 under Act R546, which we today hold is subject to Section 5 pre-clearance but has not yet received it. We agree with the Department of Justice that in the circumstances the lesser evil is to allow the council members elected in 1976 to hold over beyond the scheduled end of their terms, if necessary, rather than allow a second election to be held under Act R546, a statute to which the Attorney General has refused pre-clearance. The intent of Section 5 is clear: black voters are not to be made to wait through election after election under untested and potentially discriminatory laws. That intent would be best served here by enjoining the holding of the 1978 primary and general elections.[2]

Therefore, on consideration of plaintiff's application for interim declaration of rights, the opposition thereto, and the suggestion of mootness, it is

ORDERED by the court that plaintiff and all its agents and employees, and all persons acting in concert therewith or under its direction, are enjoined from conducting the scheduled 1978 primary and general elections for Horry County Council pending termination of this action or further order of this court. The present members of the County Council shall continue in office, notwithstanding the expiration of their elected terms, until such a time as their successors have been lawfully elected. Vacancies in the membership of the Council due to death, resignation, or other causes may be filled in the manner prescribed under Act R546.

---

**2.** We emphasize that the choice we face is considerably different from that faced by the three-judge District Court in South Carolina in its order of March 22, 1977. The only options open to it were the council elected in 1976 under Act R546 and the indirectly-elected form of government which had been held unconstitutional in 1975. It understandably chose the council elected under Act R546, notwithstanding the Voting Rights Act. On the other hand, by enjoining the 1978 elections we permit continuation in office of a body which, whatever else may be said of it, was directly elected by popular vote and whose constitutionality has not, to our knowledge, been challenged.