**CHARLTON COUNTY BOARD OF EDUCATION et al., Plaintiffs,**

v.

**UNITED STATES of America et al., Defendants.**

Civ. A. No. 78–0564.

United States District Court, District of Columbia.

Aug. 24, 1978.

Paul F. Hancock, Atty., Drew S. Days, III, Asst. Atty. Gen., Earl J. Silbert, U. S. Atty., Gerald W. Jones, Naomi F. White and Sheila K. Delaney, Attys., Dept. of Justice, Washington, D. C., for defendants-movants.

Joseph W. Dorn, Kilpatrick, Cody, Rogers, McClatchey & Regenstein, Washington, D. C., John B. Adams, County School Bd. Atty., Folkston, Ga., for plaintiffs-respondents.

Before ROBINSON, Circuit Judge, and HART and GREENE, District Judges.

### ON MOTION FOR INJUNCTION

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

The Government[1] has moved for an injunction restraining implementation of current statutory procedures for election of members of the Board of Education of Charlton County, Georgia. The motion presents important questions concerning the jurisdiction and equitable discretion of this court in dealing with requests for injunctive relief in cases brought under Section 5 of the Voting Rights Act of 1965.[2] Our resolution of the critical issues disfavors the Government and constrains us to deny the motion.[3] Our reasons follow.

### I. BACKGROUND

The Charlton County Board of Education and its chairman brought this action pursuant to Section 5, which requires jurisdictions—like Georgia—that are covered under Section 4 of the Act[4] to obtain the approbation of either the Attorney General

---

1. The defendants herein are the United States, its Attorney General, and the Assistant Attorney General to whom responsibilities pertinent to the subject matter of this litigation have been delegated.

2. 42 U.S.C. § 1973c (Supp. V 1975).

3. As later explained, text *infra* following note 16, our decision was announced from the bench upon conclusion of our conference immediately following the hearing on the motion. In this opinion we set forth our findings of fact and conclusion of law, see Fed.R.Civ.P. 52(a), and delineate the reasons leading to our disposition of the motion.

4. 42 U.S.C. § 1973b (Supp. V 1975). Early on Georgia was designated as a jurisdiction covered by the first sentence of § 4(b), 42 U.S.C. § 1973b(b) (Supp. V 1975), on the Attorney General's determination that on November 1, 1964, it maintained a "test or device" as defined in § 4(c), 42 U.S.C. § 1973b(c) (Supp. V 1975). 30 Fed.Reg. 9897 (August 6, 1963). Because Georgia has not prosecuted a successful "bailout" suit under § 4(a), 42 U.S.C. § 1973b(a) (Supp. V 1975), it remains subject to § 5. See *Briscoe v. Bell*, 432 U.S. 404, 411–415, 97 S.Ct. 2428, 2432–2434, 53 L.Ed.2d 439, 445–447 (1977).

of the United States or this court[5] before enacting or administering "any voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting different from that in force or effect on November 1, 1964."[6]

Prior to January 1, 1976, the Board was comprised of five members, appointed for staggered five-year terms by the County Grand Jury,[7] and a Superintendent of County Schools was elected by the voters of Charlton County for a four-year term.[8] On April 17, 1975, the Georgia legislature enacted Local and Special Act No. 360 (Act 360),[9] which provides that the previously appointive Board of Education should be an elective body, and that the members thereof should appoint the School Superintendent.[10] Operation of Act 360, by its terms, was conditioned on ratification in a county referendum[11] and on June 24, 1975, the voters of Charlton County approved it. The current members of the Board were elected in the fall of 1975 and they took office on January 1, 1976. As contemplated by Act 360, the Board appointed the County Superintendent of Schools.

On April 22, 1977, the Judge of the Probate Court of Charlton County—the official charged with primary responsibility for conducting county elections[12]—submitted Act 360 to the Attorney General for preclearance under Section 5. Assistant Attorney General Days, on behalf of the Attorney General, interposed an objection to Act 360's specifications that members of the Board of Education be elected at large from the county, with residency districts, numbered posts and staggered terms. The objection was based on the view that "fairly drawn single member districts would give blacks a more realistic opportunity to elect a candidate of their choice."[13] No opposition to conversion of the office of County School Superintendent from elective to appointive was voiced.

The Board of Education filed this suit on March 29, 1978, seeking a declaratory judgment that Act 360 did not establish a voting practice or procedure different from that in force or effect on November 1, 1964, and that Act 360 did not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color. On July 27, we rejected the former claim.[14] A hearing to determine whether Act 360 has a racially discriminatory purpose or effect is scheduled for September 15, and that was to be the next battleground in this litigation.

On August 3, however, the Government moved for an injunction restraining the Board from "conducting" a board-member primary election set for August 8 and a general election slated for November 7. By order of court issued August 4, the period for the Board's response to the motion was shortened and a date for hearing the motion was arranged.[15] The parties were specifically directed to address, with argument and appropriate affidavits, "the question whether and to what extent the Charlton County Board of Education (as distinguished from some other body or official)

---

5. Judicial approval must be based on a determination that the change in voting practices or procedures "does not have the purpose, and will not have the effect, of denying or abridging the right to vote on account of race or color . . . ." 42 U.S.C. § 1973c (Supp. V 1975).

6. *Id.*

7. Ga.Code Ann. § 2–6801 (1975).

8. Ga.Code Ann. § 2–6901 (1975).

9. 1975 Ga.Sess.Laws, Local and Special Acts and Resolutions, vol. II 3952–3957.

10. *Id.* § 7.

11. *Id.* §§ 8, 9.

12. The County Probate Judge supervises county elections and appoints election managers. Ga.Code Ann. § 34–501 (1975). The Secretary of State is also assigned certain duties with respect to county elections. *Id.* § 34–301.

13. Letter from Drew S. Days, III, to J. S. Haddock, Jr. (June 21, 1977).

14. *Charlton County Bd. of Educ. v. United States,* Civ. No. 78–0564 (order of July 27, 1978).

15. *Id.* (order of Aug. 4, 1978).

may be conducting, or participating in the conduct of, the primary election" scheduled for August 8.[16] The motion was heard at 3:30 p. m. on August 7 and, after an immediately ensuing conference, we met the exigencies of the situation by announcing from the bench our decision to deny the requested injunction. This opinion elucidates the reasons leading us to that disposition.

Two fundamental considerations underlie our ruling. First, we do not have jurisdiction over the persons legally responsible for conducting school board elections in Charlton County, nor are representatives of the election officials before us.[17] Second, we are endowed with ample equitable discretion to decline to enjoin some changes in voting practices covered by Section 5 even though they have not been precleared by the Attorney General or this court, and this case in its present posture calls for exercise of that discretion.[18]

## II. PERSONAL JURISDICTION

In its motion for the injunction and an accompanying affidavit, the Government flatly averred that the Board was proceeding to conduct the August 8 primary election.[19] After issuance of the August 4 order, however, the Government reexamined

its position and conceded that the Board does not participate managerially in elections to its membership.[20] An affidavit made by the County Superintendent and submitted by the Board confirms this pivotal fact.[21]

Yet the Government has continued to press the motion, arguing that in this litigation the Board is acting on behalf of the State of Georgia, which passed Act 360, and the State and County election officials who administer it. In support of this contention, the Government relies primarily on Section 5, urging that the Board has standing to bring this suit only because it is representing the State. To further buttress its claim, the Government asserts that under Georgia law boards of education lack capacity to sue or be sued in their own right.

■■■ We start from the principle that the power of this court to issue an injunction is wholly dependent on possession of *in personam* jurisdiction over those to whom the injunction is directed.[22] To be sure, an injunctive decree may bind not only litigants but also those who are represented by litigants,[23] but this representation must exist *in fact.*[24] The pleadings in this case

16. *Id.;* see text *supra* at notes 15–16.

17. Discussed in Part II *infra.*

18. Discussed in Part III *infra.*

19. Motion for Order Enjoining Implementation of Voting Changes Which Have Not Satisfied the Preclearance Requirements of Section 5 (Aug. 3, 1978).

20. Supplemental Memorandum of the United States (Aug. 7, 1978).

21. Affidavit of D. Ray James, Superintendent of Schools for the Charlton County Board of Education (Aug. 7, 1978).

22. See, *e. g., Chase Nat'l Bank v. Norwalk,* 291 U.S. 431, 54 S.Ct. 475, 78 L.Ed. 894 (1934); *Hitchman Coal & Coke Co. v. Mitchell,* 245 U.S. 229, 38 S.Ct. 65, 62 L.Ed. 260 (1917); *Norris v. Georgia,* 522 F.2d 1006 (4th Cir. 1975); *ESP Fidelity Corp. v. HUD,* 512 F.2d 887 (9th Cir. 1975); *Smith v. Board of Comm'rs,* 259 F.Supp. 423 (D.D.C.1966), *aff'd on other grounds,* 127 U.S.App.D.C. 85, 380 F.2d 632 (1967); 7 J. Moore, Federal Practice, ¶ 65.03[3] (2d ed. 1948).

23. Fed.R.Civ.P. 65(d) provides that "[e]very order granting an injunction and every restraining order . . . is binding only upon the parties to the action, their officers, agents, servants, employees and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise." Although Rule 65(d) does not specify that injunctive orders bind those represented by parties, *cf.* Fed.R.Civ.P. 23, the Supreme Court in *Regal Knitwear Co. v. NLRB,* 324 U.S. 9, 65 S.Ct. 478, 89 L.Ed. 661 (1965) explained that Rule 65(d) "is derived from the common-law doctrine that a decree of injunction not only binds the parties defendant but also those identified with them in interest, in 'privity' with them, *represented by them,* or subject to their control." 324 U.S. at 14, 65 S.Ct. at 481, 89 L.Ed. at 666 (emphasis added).

24. See, *e. g., Teamsters Local 523 v. Keystone Freight Lines, Inc.,* 123 F.2d 326 (10th Cir. 1941); 7 J. Moore, Federal Practice, ¶ 65.13 (2d ed. 1948).

nowise intimate that the Board is maintaining this suit as an agent either of the State or of the County election officials.[25] Nor has counsel for the Board been controverted in the least in his factual assertion that the Board has brought this action solely in its own behalf.[26]

The Government's theory that the Board is litigating herein for the benefit of the State and the County rests on little more than a play on words.[27] Section 5 provides that a declaratory judgment action may be instituted by a "State or [political] subdivision" made subject to its strictures by Section 4. Thus, the Government begins with the premise that in order for the Board to qualify as a Section 5 plaintiff, it must be a "State or political subdivision." In *United States v. Board of Commissioners of Sheffield (Sheffield)*,[28] the Supreme Court construed the term "political subdivision" in Section 5 to refer only to such political units in nondesignated states as may be separately designated for coverage under Section 4(b).[29] Because Georgia is a designated state, the Government reasons, the Board must be representing the State of Georgia in its entirety.

There are two insurmountable problems with this deduction. In the first place, it ignores the possibility that the Board simply may lack standing to bring the action. The Supreme Court noted in *Sheffield* that the word "State" in Section 5 embraces "all entities having power over any aspect of the electoral process within designated jurisdictions . . . ."[30] Since Georgia is a designated jurisdiction, the "political subdivision" disjunct of Section 5 is inapplicable here;[31] and since the Charlton County Board of Education has no authority over the electoral process, it may not be a "State" as that word is used in Section 5. In short, the Board may not be a proper Section 5 plaintiff. On the other hand, the *Sheffield* Court was concerned with a governmental body—a city—that had enacted and administered electoral changes. That the above-quoted language may not have been intended to constrict Section 5 is suggested by the Court's observation that Congress assumed that "the coverage of § 5 was unlimited."[32]

We need not and do not now decide whether the Board has standing to maintain this suit. The Government has not challenged the Board's standing and the Board has had little chance to make known its views on that score.[33] More importantly, the Government's position is mistaken even assuming that the Board has standing. That the Board, acting alone, may conceivably be a "State" within Section 5 does not imply that the Board is in fact representing the State of Georgia in this proceeding. In *Sheffield*, on the basis of the structure and

---

**25.** We do not suggest that this is a *sine qua non* of a representative suit, however. See Fed.R.Civ.P. 9(a).

**26.** The first intimation to us that the Board might be acting here in a representative capacity arose in the Government's supplemental memorandum in response to the prehearing order. See text *supra* at notes 21–22. That memorandum does not assert that there is any factual basis for treating the Board as a representative of anyone. Rather, it avers that, as a matter of law—to qualify as a proper party to bring this suit—the Board must be representing the State or some County election official. At the August 7 hearing on the motion for injunction, counsel for the Board categorically stated that his client was suing in its own behalf, and not for the State of Georgia or the Charlton County election officials. That occasion presented the Board's only opportunity to rebut the Government's supplemental memorandum, and at no time has Government counsel disput-

ed Board counsel's statement as an accurate reflection of what the Board has in mind.

**27.** We note that if the Board attempted to sue as the representative of the class affected by the Attorney General's objection to Act 360, it would have to comply with the prerequisites of Fed.R.Civ.P. 23.

**28.** 435 U.S. 110, 98 S.Ct. 965, 55 L.Ed.2d 148 (1978).

**29.** *Id.* at 126, 98 S.Ct. at 976, 55 L.Ed.2d at 163.

**30.** *Id.* at 118, 98 S.Ct. at 972, 55 L.Ed.2d at 158.

**31.** See text *supra* at note 29.

**32.** *Supra* note 28, 435 U.S. at 133, 98 S.Ct. at 980, 55 L.Ed.2d at 167.

**33.** See note 26 *supra*.

legislative history of the Act, the Supreme Court construed the word "State" in Section 5 to include a city,[34] but took care to add that that word does not have such a broad meaning throughout the Act.[35] The special meaning of "State" in Section 5 provides no warrant for holding that the Board actually appears for the State of Georgia in this case.

Similarly, the fact that the Board may, under Georgia law, lack capacity to sue or be sued[36]—another question we do not reach—does not support the Government's claim that the Board has brought this action as the representative of the State of Georgia and the County election officials. The Board may simply be unable to sue.[37] And the Government has not called to our attention, nor have we found independently, any Georgia law indicating that legal inability to sue may be remedied by undertaking to sue as a representative party. Moreover, even if the Board has capacity to sue only if it does so as a representative, nothing whatsoever emerges from the record to support a finding of fact that it is here as a proxy for the State of Georgia or any County election official.

Were we to adopt the Government's position that solely by operation of Section 5 the Board is representing the State and election officials of the County, the constitutionality of Section 5 would be drawn into serious question. Those responsible for administering Act 360 have not been made parties to this litigation, and due process may not tolerate adjudication of the rights of nonparties not properly notified.[38] Moreover, there is not as much as a murmur that the Board and election officials are in any sort of active concert regarding the holding of the upcoming elections.[39] Statutes are to be construed to avoid constitutional infirmity whenever such an interpretation is permissible in light of the language used,[40] and that requires rejection of the Government's reading of Section 5.

With the Government's legal arguments thus coming to naught, the Board's uncontroverted assertions[41] compel the conclusion that it is not representing either the State of Georgia or the County election officials here. We therefore lack *in personam* jurisdiction to award the sought-after injunction.[42]

**34.** *Supra* note 28.

**35.** 435 U.S. at 127, 98 S.Ct. at 977, 55 L.Ed.2d at 164.

**36.** The Government cites *Board of Educ. v. South Mich. Nat'l Bank of Coldwater*, 184 Ga. 641, 192 S.E. 382 (1937); *Foster v. Cobb County Bd. of Educ.*, 133 Ga.App. 768, 213 S.E.2d 38 (1975).

**37.** See Fed.R.Civ.P. 17(b) and cases cited *supra* note 36.

**38.** See, *e. g., Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

The parties apparently have failed to consider the applicability of the notice demands of 28 U.S.C. § 2284(2) (Supp. V 1975), as amended by Pub.L. No. 94–381, 90 Stat. 1119 (1976), which provides:

If the action is against a State, or officer, or agency thereof, at least five days' notice of hearing of the action shall be given by registered or certified mail to the Governor and attorney general of the State.

Because § 2284 is controlling on procedural aspects of this case, 42 U.S.C. § 1973c (Supp. V 1975), compliance with this notice provision is required if the present action may be fairly characterized as one against a state or a state officer. See S.Rep.No.94–1147, 94th Cong. 2d Sess. (1976), reprinted in [1976] U.S.Code Cong. & Admin.News, p. 1987. In view of our disposition of the Government's motion we do not decide whether the notice described in Section 2284(2) should have been given here.

**39.** See Fed.R.Civ.P. 65(d).

**40.** See, *e. g., Simpson v. United States*, 435 U.S. 6, 98 S.Ct. 909, 55 L.Ed.2d 70 (1978); *Eastern R.R. Presidents Conference v. Noerr Motor Freight Inc.*, 365 U.S. 127, 81 S.Ct. 523, 5 L.Ed.2d 464 (1960); *United States v. Harriss*, 347 U.S. 612, 74 S.Ct. 808, 98 L.Ed. 989 (1954); *United States v. Rumely*, 345 U.S. 41, 73 S.Ct. 543, 97 L.Ed. 770 (1953).

**41.** See note 26 *supra* and accompanying text.

**42.** Injunctive relief against the elections at stake here could have been sought in the federal district court in Georgia, which would have had subject-matter jurisdiction to enjoin uncleared changes in voting practices, see *Georgia v. United States*, 411 U.S. 526, 93 S.Ct. 1702, 36 L.Ed.2d 472 (1973), and where the

## III. EQUITABLE DISCRETION

■ The Supreme Court has recognized the existence of judicial discretion to decline to enjoin, on grounds of equity, voting changes subject to Section 5 that have neither been precleared by the Attorney General nor vindicated by this court as lacking a racially discriminatory purpose or effect.[43] Perhaps most in point is the Court's recent decision in *Berry v. Doles*.[44] Four days prior to a 1976 primary election for two seats on a county board of commissioners, a group of citizens filed an injunctive and declaratory judgment action challenging an eight-year old state law which staggered the Commissioners' terms. The District Court for the Middle District of Georgia did not act on the plaintiffs' request until after the 1976 primary and general elections. In 1977, the court enjoined further enforcement of the challenged statute until such time as it might be approved by the Attorney General or this court. The court refused, however, the plaintiffs' request to set aside the 1976 elections or, alternatively, to require the members elected in 1976 for four-year terms to stand for election again in 1978. The plaintiffs appealed to the Supreme Court which, at the Government's suggestion, reversed and instructed the district court to enter an order allowing the defendants 30 days within which to apply for Section 5 preclearance. The Court explained the rationale of this direction:

> If approval is obtained, the matter will be at an end. If approval is denied, appellants are free to renew to the District Court their request for simultaneous elec-

tion of all members of the Board at the 1978 general election.[45]

An analogous solution seems wholly appropriate here. The primary election will not determine who sits on the Charlton County Board of Education; permitting that election to go forth cannot abridge or dilute anyone's voting rights in Charlton County. We have scheduled this case for hearing in September and—unless it is sooner dismissed for want of a plaintiff with standing—we anticipate a decision shortly thereafter on whether Act 360 has a discriminatory purpose or effect. Should we determine that Act 360 does not have a proscribed purpose or effect, then, as the Supreme Court said, "the matter will be at an end." On the other hand, if we decide that Act 360 violates Section 5, we can, should the circumstances justify, enjoin the November general election of Board members.

The eleventh-hour nature of the Government's injunctive motion provides a final reason to decline to interfere with the August 8 primary.[46] Were we on election eve to enjoin voting for members of the Board of Education, we likely would engender confusion among the electorate and hamper the election officials' task of conducting the primary for other county offices in an orderly and efficient manner. It bears repeating that the primary election will in no way work a change in the composition of the Board prior to the general election. Sound exercise of equitable discretion would hardly occasion such unnecessary disruption.

election officials could easily have been made parties. This court also has subject-matter jurisdiction to enjoin unapproved voting changes intercepted by § 5. See *Beer v. United States*, 374 F.Supp. 357, 362 (D.D.C.1974) (3-judge court); *City of Petersburg v. United States*, 354 F.Supp. 1021, 1023–1024 (D.D.C.1972) (3-judge court), *aff'd sub nom.*, *Diamond v. United States*, 412 U.S. 901, 93 S.Ct. 2290, 36 L.Ed.2d 967 (1973). Our ruling today is only that we lack *in personam* jurisdiction to grant the Government's motion.

**43.** *E. g., Connor v. Waller*, 421 U.S. 656, 95 S.Ct. 2003, 44 L.Ed.2d 486 (1975) (per curiam); *Georgia v. United States*, 411 U.S. 526, 541, 93 S.Ct. 1702, 1711, 36 L.Ed.2d 472, 485 (1973);

*Perkins v. Matthews*, 400 U.S. 379, 396–397, 91 S.Ct. 431, 441, 27 L.Ed.2d 476, 489–490 (1971). See also *Moore v. Leflore County Bd. of Election Comm'rs*, 351 F.Supp. 848, 852–853 (N.D. Miss.1971) (3-judge court).

**44.** —— U.S. ——, 98 S.Ct. 2692, 57 L.Ed.2d 693 (1978) (per curiam).

**45.** *Id.* at 2694.

**46.** This factor, among others, distinguishes this case from *Horry County v. United States*, 449 F.Supp. 990 (D.D.C., 1978) (3-judge court), upon which the Government relies heavily.

## IV. CONCLUSION

Section 5 of the Voting Rights Act does not abrogate jurisdictional barriers to judicial restraint of elections conducted by those who are neither before the court as parties nor represented by litigants. And had we the power to interdict the elections challenged here, strong equitable considerations would counsel against its invocation. It follows that the Government's motion must be denied.

*So ordered.*