20953

Ralph VAN FORE, and Nancy Johnson, individually and as representatives of the taxpayers of Horry County and as representatives of a class of registered electors of Horry County, South Carolina, who wish to determine by referendum in accordance with general law the form, number and composition of the County Council of Horry County, and any change therein, Appellants, v. Eunice COOKE, Ednee Guyer, Charlie Hardwick, and George Johnson as Members of the Horry County Election Commission, J. Archie Lee, as Chairman of the Horry County Democratic Party, Daniel J. Carrison, as Chairman of the Horry County Republican Party, Greg Smith, Jesse Spigner Carter, and U. D. Phipps, individually and as representatives of all prospective candidates in the proposed May 20, 1979 election, Respondents.

(255 S. E. (2d) 339)

*Guerard & Applegate,* Charleston, *for appellants.*

*Stevens, Stevens & Thomas,* Myrtle Beach, *for respondents Lee, Smith, Carter* and *Phipps.*

*William M. Bruner,* North Myrtle Beach, *for respondent Carrison.*

*Daniel R. McLeod, Atty. Gen.* and *Karen LeCraft Henderson, Senior Asst. Atty. Gen.,* Columbia, *for respondents Cooke, Guyer, Hardwick* and *Johnson.*

May 3, 1979.

*Per Curiam:*

This is a declaratory judgment action to determine the validity of Acts No. R760 and No. R834 of 1978 which provide for the election of members of the Horry County Council. The trial court upheld the constitutionality of the acts. We reverse, concluding they are unconstitutional as special legislation.

In August, 1975, Horry County voters selected the council-administrator form of government and expressed a preference for election of council members at large. In 1976, the general assembly enacted Act No. 845, providing for the election of eight council members and a chairman. Candidates were subsequently elected in the general election of November, 1976, and served as the governing body of Horry County until March, 1979.

Section 5 of the Voting Rights Act of 1965 prohibits states from implementing any change in a "voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting" without either obtaining a declaratory judgment from the District Court for the District of Columbia that the proposed change "does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race or color," or submitting the plan to the Attorney General of the United States

and receiving no objection within sixty days. 42 U. S. C. A. § 1973c.

An action was instituted in the District Court for the District of Columbia to determine the validity of Act No. 845. The elected council members were permitted, by federal court order, to remain in office pending Justice Department approval. When the 1978 acts challenged here were enacted, the action was dismissed prior to any determination.

The 1978 acts increase the number of the Horry County Council members from eight to eleven, and provide for the election of council members from single member districts. As the Justice Department interposed no objection to these changes within the sixty day period, an election was held on March 20, 1979, and a new Horry County Council was elected.

The trial court concluded the 1978 acts were constitutional under the rationale of *Duncan v. County of York,* 267 S. C. 327, 228 S. E. (2d) 92 (1976), where an act providing for a referendum to choose the form of government for York County withstood similar constitutional attack. We stated in *Duncan:*

"There can be no doubt but that Act No. 448 is an act for a specific county. We think, however, it is constitutionally permissible as a 'One-shot' proposition, in view of § 1 of Article VIII . . . . This constitutional provision contemplates that legislation by the General Assembly would be required to bring about an orderly transition, but such authority is a temporary nature and extends only to the point necessary to place Article VIII fully into operation."

The trial court erred in concluding that our decision in *Duncan v. County of York* validates the acts challenged here. The limited exception recognized in *Duncan* is cast against the overriding considerations of Article VIII, Section 7 which prohibits the general assembly from enacting special legislation. In guaranteeing home rule to the counties, Arti-

cle VIII, Section 7 contemplates that the general assembly will play limited role in effectuating the transition. This Court stated in *Knight v. Salisbury,* 262 S. C. 565, 206 S. E. (2d) 875 (1974) :

"It is clearly intended that home rule be given to the counties and that county government should function in the county seats rather than at the State Capitol. If the counties are to remain units of government, the power to function must exist at the county level."

As we recognized in *Duncan v. County of York, supra,* the general law permits the general assembly to act to a very limited extent by special law in the establishment of each initial county government. See Code §§ 4-9-10(a) and 4-9-90 (1976). It does not, however, allow the general assembly to repeatedly inject its will into the operation of county government. While we recognize the necessity for compliance with the Voting Rights Act of 1965, we conclude our constitution does not permit the general assembly to enact successive special legislation in an attempt to secure Justice Department sanction.

In view of our holding that the 1978 acts represent unconstitutional special legislation, the results of the recent election held pursuant to those acts are rendered void. Accordingly, the previous council members elected in November, 1976, shall resume office and continue to govern until their successors are elected and duly qualified.

Reversed.

GREGORY, J., not participating.