## 21240

HORRY COUNTY, a Body Politic, Petitioner, v. Eunice COOKE, George Johnson, Edmee Geyer, Elvin D. Tirrell, and Gladys Adams, as Commissioners of Election for Horry County, and Daniel R. McLeod, Attorney General of the State of South Carolina, Respondents. In re HORRY COUNTY, a Body Politic, Plaintiff, v. Eunice COOKE, George Johnson, Edmee Geyer, Elvin D. Tirrell, and Gladys Adams, as Commissioners of Election for Horry County, and Daniel R. McLeod, Attorney General of the State of South Carolina, Defendants.

(267 S. E. (2d) 82)

*John P. Henry*, of *Thompson, Henry & Lovelace*, Conway, *for plaintiff.*

*Atty. Gen. Daniel R. McLeod, Deputy Atty. Gen. C. Tolbert Goolsby, Jr., Senior Asst. Atty. Gen. Treva G. Ashworth*, and *State Atty. David C. Eckstrom*, Columbia, *for defendants.*

May 27, 1980.

HARWELL, Justice:

This action in the original jurisdiction of the court, was brought by Horry County under the Uniform Declaratory Judgment Act, § 15-53-10, *et seq.*, S. C. Code Ann. (1976), to determine the constitutionality of Acts R308 §§ 2, 4 and R320 of the 1980 Acts of the South Carolina General Assembly which provide for the election of members of the Horry County Council.

In August 1975, pursuant to the then recently ratified home rule amendment to the South Carolina Constitution, Art. VIII, § 7 and the home rule enabling legislation set forth at §§ 14-3701, *et seq.*, S. C. Code Ann. (1962) (recodified as §§ 4-9-10, *et seq.*, S. C. Code Ann. [1976]) Horry County voters selected the council-administrator form of government and expressed a preference for election of council members at large. Following the referendum results and as further mandated by law, the General Assembly by Act 845 of 1976 provided for the election of eight council members and a chairman.

Section 5 of the Voting Rights of 1965 prohibits states from implementing any change in a "voting qualification or prerequisite to voting, or standard, practice, or procedure with respect to voting" without either obtaining a declara-

tory judgment from the District Court for the District of Columbia that the proposed change "does not have the effect of denying or abridging the right to vote on account of race or color", or submitting the plan to the Attorney General of the United States and receiving no objection within sixty days. 42 U. S. C. A. § 1973c.

Act 845 was submitted to the Attorney General of the United States for consideration but the information necessary to make the submission complete was not received by the Attorney General until September 13, 1976. Meanwhile, on November 2, 1976, the Horry County Council was elected pursuant to Act 845. On November 12, 1976, within sixty days of submission of the act, the Attorney General interposed his objection.

Thereafter suit was brought in Federal Court in the District of South Carolina to enjoin the seating of the County Council elected under the plan found objectionable. *McCray v. Hucks,* C. A. No. 76-2476. The District Court found that the Horry County plan was subject to the preclearance requirements of the Voting Rights Act and directed the county to institute an action in the United States District Court for the District of Columbia as provided for in 42 U. S. C. A. § 1973c. The South Carolina District Court, however, allowed the incumbents to take seat as a *de facto* county government on an interim basis until the District of Columbia District Court passed on the merits of the plan. *McCray v. Hucks, supra,* Order of March 22, 1977.

Horry County brought suit in the District Court for the District of Columbia as directed by the South Carolina District Court Order. *Horry County v. United States,* C. A. No. 77-1685. That court found Act 845 subject to the preclearance requirements of 42 U. S. C. A. § 1973c and also continued the *de facto* government pending its decision on the merits. *Horry County v. United States,* D. C., 449 F. Supp. 990 (1978).

In 1978 the General Assembly, by special legislation, enacted Acts No. R760 and No. R834 which provided for the election of members of the Horry County Council from single member election districts and repealed Act 845 of 1976. The civil action in the District of Columbia District Court was then dismissed prior to any determination on the merits. The Justice Department interposed no objection to the new plan and elections were held under the 1978 legislation.

A declaratory judgment action was brought in the state court to determine the validity of Acts No. 760 and No. 834. This court, finding the acts to be unconstitutional as violative of Article VIII § 7 of the South Carolina Constitution, stated:

"[T]he general law permits the general assembly to act to a very limited extent by special law in the establishment of each *initial* county government. See Code §§ 4-9-10(a) and 4-9-90 (1976). It does not, however, allow the general assembly to repeatedly inject its will into the operation of county government. While we recognize the necessity for compliance with the Voting Rights Act of 1965, we conclude our constitution does not permit the general assembly to enact successive special legislation in an attempt to secure Justice Department sanction." (Emphasis added.)

*Van Fore v. Cooke,* 273 S. C. 136, 255 S. E. (2d) 339 (1979). The results of the 1978 elections were rendered void and the members of the *de facto* government resumed their seats.

The issue before the court today is whether or not the 1980 legislation passes muster under Article VIII § 7. We conclude that it does.

Relative portions of Article VIII in the Constitution are as follows:

"§ 1. Powers of political subdivisions continued.—The powers possessed by all counties, cities, towns, and other political subdivisions at the effective date of this Constitu-

tion shall continue until changed in a manner provided by law.

. . . . .

"§ 7. Organization, powers, duties, etc., of counties; special laws prohibited.—The General Assembly shall provide by general law for the structure, organization, powers, duties, functions, and the responsibilities of counties, including the power to tax different areas at different rates of taxation related to the nature and level of governmental services provided. Alternate forms of government, not to exceed five, shall be established. No laws for a specific county shall be enacted and no county shall be exempted from the general laws or laws applicable to the selected alternative form of government."

. . . . .

"§ 17. Construction of Constitution and laws.—The provisions of this Constitution and all laws concerning local government shall be liberally construed in their favor. Powers, duties, and responsibilities granted local government subdivisions by this Constitution and by law shall include those fairly implied and not prohibited by this Constitution."

This court has recognized an exception to the outright prohibition against laws for a specific county as stated in Article VIII § 7. By reading Sections 1, 7, and 17 of Article VIII together, the court in *Duncan v. York County*, 267 S. C. 327, 228 S. E. (2d) 92 (1976), reasoned that specific legislation necessary to bring about an orderly transition to home rule is constitutionally permissible. The court stated that such authority is temporary in nature as a "one-shot" proposition and extends only to the point necessary to place Article VIII fully into operation.

The "one-shot" rationale in *Duncan v. York County, supra,* was actually applied to a state of facts in which not one, but two special statutes were necessary to place Article VIII fully into operation in York County. Thus by implication it is clear that by "one-shot proposition" the court was

referring not merely to a single legislative enactment but rather to that process whereby the initial, home-rule county government becomes fully operational.

In the Horry County situation, this court in *Van Fore v. Cooke, supra,* found the 1978 enabling legislation repugnant to Article VIII § 7's ban on special legislation. Those acts were directed to Horry County only. The court had before it then a legal context different from that before the court today.

The 1980 legislation restricts the ability of the General Assembly to act and can be made applicable to any of the counties. Act R308 § 2 amends Section 4-9-10(c) of the home rule enabling legislation by providing at the end:

"If the governing body of the county as initially or subsequently established pursuant to a referendum or otherwise shall be declared to be illegal and not in compliance with State and Federal law by a court of competent jurisdiction, the General Assembly shall have the right to prescribe the form of government, the method of election, and the number and terms of council members but may submit to the qualified electors by referendum a question as to their wishes with respect to any element thereof which question shall include as an option the method of election in effect at the time of the referendum."

This provision is to be liberally construed and is presumed constitutional if reasonably possible. Article VIII § 17, *supra; Duncan v. York County, supra.* Given the case law espoused in *Duncan v. York County, supra,* and *Van Fore v. Cooke, supra,* the only reasonable interpretation to be given this section is that it addresses only the situation where the transition is being made to the inital county government. Thus the language "or subsequently" in the act refers not to county governments established subsequent to the initial one but rather to attempts to set up the initial government. The transition to home rule is a "one-shot" process and once a legally constituted government becomes functional the *Dun-*

*can* case exception ends, thereby precluding any further special legislation. The language "or subsequently" merely recognizes the possibility, as typified by Horry County's experience, that more than one attempt might be necessary to complete the transition to home rule.

Act R308 § 2 is triggered only when a court of competent jurisdiction finds an attempt to institute home rule in a county to be illegal. The Federal District Court has never passed upon the merits of any of the Horry County plans. This court, however, did so in *Van Fore v. Cooke, supra.* The general statute is, therefore, activated and made applicable to Horry County.

It undoubtedly was unforeseen in the early stages of home rule legal development that the full shift to legally constituted county governments might prove so frustratingly complex. The goal in all this legal activity is simply to establish an *initial,* legal county government. While we sympathize with the voters in Horry County who have had only a *de facto* government since 1976, we must assure that their initial government is established within the spirit of Article VIII § 7. The 1978 acts struck down in *Van Fore v. Cooke, supra,* could not stand since they were special acts summarily enacted in response to the Justice Department's actions. Here, however, the legislature has limited its ability to act by special legislation. The amendment to the general law in Act R308 § 2 accommodates legal contingencies not originally foreseen but does not press beyond the *Duncan* case exception allowing the legislature to establish a legal county government. We cannot say that this act is not reasonably related to the transition contemplated by Article VIII.

Pursuant to Act R308 § 2 the General Assembly passed Act R320 which sets forth the initial Horry County government under home rule. Act R320 is entitled:

"An Act to Establish Single Member Election Districts For The Election of County Council Of Horry County Under The Council-Administrator Form Of Government; To

Provide For The Number, Terms And Election Of Such Members And To Repeal Act 845 Of 1976 Relating To The County Council Of Horry County."

This act is constitutionally permissible under the *Duncan* case rationale.

Plaintiff argues next that Article III, § 34, subsection IX which prohibits special law in all cases where a general law can be made applicable bars Acts R308 and R320. We disagree. The General Assembly has amended the general law and has thereby created a general classification. Only when a county's circumstances meet the general criteria does subsequent legislation applicable to that county become necessary. We have recognized this subsequent, special legislation as constitutionally permissible as reasonably related to the transition to the initial county government. *Duncan v. York County, supra.*

Plaintiff next challenges the constitutionality of Act R308 § 4 which provides for reapportionment in counties upon completion of the federal decennial census. Plaintiff raises a question of legal theory only. No justiciable controversy is presented. *See,* cases collected at 8 West's South Carolina Digest, *Declaratory Judgment,* Key Nos. 61-68. As rendition of an advisory opinion would be improper, we dismiss this challenge outright.

The prayer for relief of the complaint is denied and Acts R308 § 2 and R320 are hereby declared constitutional and Horry County may proceed pursuant to said acts to form its initial county government. We emphasize that after this initial government has been legally established, the General Assembly will no longer be permitted to interfere with the Horry County Government.

LITTLEJOHN and NESS, JJ., concur.

LEWIS, C. J., dissents.

GREGORY, J., not participating.

LEWIS, Chief Justice (dissenting) :

The primary question in this case concerns whether or not the General Assembly may change the current legal and functioning form of government of Horry County in light of Article VIII of our State Constitution. I would adhere to our precedent by holding the Constitution prevents the General Assembly from repeatedly interjecting through special legislation its will into the operation of county government and I would therefore invalidate the Acts.

After interpreting the Acts as addressing only the situation of transition to initial county government, the majority validates the enactments by applying R308, Section 2 of the 1980 Acts to the current case. They hold that this provision of the Act is activated because the initial form of government was declared invalid by this Court in *Van Fore v. Cooke, supra.* Their premise is incorrect. Neither this Court, nor any other tribunal, has declared the initial form of government invalid.

*Van Fore v. Cooke, supra,* relied upon by the majority, involved a similar attempt by the legislature to enact successive special legislation in an attempt to secure Justice Department sanction. We held the attempt invalid and directed reinstatement of the initial form of government. The only difference between the legislation in that case and the case presently before the Court is R 308, Section 2 of the Acts, which purports to allow the General Assembly to prescribe a form of government in the event the initial form is invalidated.

Despite the implication of the majority otherwise, it is clear that the initial form of government of Horry County has *never* been "declared to be illegal and not in compliance with the State or Federal law by a court of competent jurisdiction." R. 308, Section 2. Therefore, even assuming this additional provision satisfies the constitutional defect present in *Van Fore v. Cooke, supra,* the conditions of this new provision have not been met. Hence, the provision is of no

moment and cannot be held to remedy the fatal defect recognized in *Van Fore v. Cooke, supra.*

I further disagree with the opinion of the majority because it applies the Acts in an unconstitutional manner.

We held in *Duncan, supra,* that no constitutional infirmity was presented by an Act providing for a "one shot" special legislation to bring about an orderly transition to county government. However, we added that under our constitution such authority of the General Assembly was of a limited and temporary nature.

Horry County's initial form of government has been in effect since 1976. I cannot agree that after four years, their government is still in a transition. The only possible conclusion is the legislature has exceeded the temporary nature of their authority. Under the reasoning and holding of the majority, invalidation of the initial form of government 100 years after its installation would involve a transitory stage and consequently allow the General Assembly to thereafter interject its will into the operation of the county's government. They have allowed the "one shot" exception articulated in *Duncan, supra,* to consume the general rule mandated by the Constitution.

I respectfully dissent.