23440

J. Walter HAMM, Albert F. Busby, H.C. Martin, Jr., Sam Pat Boland, and Arthur Sparks, individually and as members of the Board of the Newberry County Water and Sewer Authority, Respondents v. Charles T. CROMER and Heber Long, individually and as representatives of the class of the new appointees, recommended by the Newberry County Council and Newberry County, Appellants, and Carroll A. Campbell, Jr., as Governor of the State of South Carolina, Defendant.

(408 S.E. (2d) 227)

Supreme Court

*Richard J. Breibart* and *Robert E. Newton,* Lexington, *for appellants.*

*Leo W. Hill* and *Stephen Brown,* Greenville, *for respondents.*

*Sr. Asst. Atty. Gen. Treva G. Ashworth,* Columbia, *for defendant.*

Heard Feb. 19, 1991.

Decided July 22, 1991.

HARWELL, Justice:

This case involves a declaratory judgment action in which the trial judge determined that Act No. 784, 1988 S.C. Acts

6447, an act that changed the method of appointment for the members of the governing body of the Newberry County Water and Sewer Authority, was prohibited special legislation and thus, violative of S.C. Const., art. VIII, §§ 1 and 7. We affirm.

## I. FACTS

Newberry County Water and Sewer Authority (Authority) was created by Act No. 119, 1963 S.C. Acts 114 and Act No. 190, 1969 S.C. Acts 202. Pursuant to Act No. 190, the governing body of the Authority was to be composed of seven resident electors of Newberry County, to be appointed by the Governor upon a recommendation of a majority of the members of the Newberry County Legislative Delegation. In 1988, the legislature adopted Act No. 784, 1988 S.C. Acts 6447, which changed the method of appointment for the governing body of the Authority. Act No. 784 required that each of the seven resident electors be representative of a county council district and that they be appointed by the Governor upon recommendation of the majority of members of the Newberry County Council. Act No. 784 further provided that the terms of the present governing members of the Authority who had been appointed at-large under Act No. 190, would expire on the effective date of Act No. 784.

Act No. 784 altered Act No. 190 in that Act No. 784: (1) changed the representation of the governing members of the Authority from an at-large representation to district representation, one from each county council district; (2) granted the Newberry County Council, rather than the legislative delegation, power to make the appointments; and (3) provided the county an opportunity to replace all of the current governing body members of the Authority by providing for the expiration of their terms.

Act No. 784 was ratified by the legislature, but was vetoed by the Governor. Shortly after, the veto was overridden by the House of Representatives and the Senate. Acting under the requirements set forth in Act No. 784, the Newberry County Council made recommendations to the Governor for appointments to be made by the Governor to the Authority. Plaintiffs-respondents J. Walter Hamm, *et al.* brought a declaratory action seeking to have Act No. 784 declared un-

constitutional. Specifically, respondents argued that Act No. 784 violated the constitutional prohibition against special legislation contained in S.C. Const., art. VIII, §§ 1 and 7. Respondents further asserted that Act No. 784 did not fall within any exception or category of permissible special legislation, specifically, that Act No. 784 was neither remedial nor transitional in nature. Defendants-appellants Charles T. Cromer *et al.*[1] contended that Act No. 784 was constitutional and furthered home rule by giving power to the Newberry County Council to make appointments. Appellants also argued that Act No. 784 fell within the remedial or transitional exception to special legislation. The trial judge found in favor of respondents, and held that Act No. 784 was unconstitutional. This appeal followed.

## II. DISCUSSION

Act No. 784 was enacted subsequent to the ratification of Article VIII on March 7, 1973, by which the General Assembly was prohibited from enacting laws for a specific county or municipality. S.C. Const., art. VIII, § 7.[2] Article VIII of the South Carolina Constitution left political subdivisions such as the Authority, as they were at the time of the amendments in 1973. S.C. Const., art. VIII, § 1.[3] In construing Sections 1 and 7, this Court concluded that together, these sections meant that existing political subdivisions should continue to function as authorized by law on March 7, 1973, when Article VIII was ratified, until the General Assembly acted to fulfill Section 7. *See, Knight v. Salisbury,* 262 S.C. 565, 206 S.E. (2d) 875 (1974).

In *Kleckley v. Pulliam,* 265 S.C. 177, 217 S.E. (2d) 217 (1975) this Court held that the prohibition against special legislation contained in Article VIII, meant that no law could be passed concerning a specific county which related to those powers, duties, functions, and responsibilities, which under

---

[1] Defendant Governor Carroll A. Campbell, Jr. took no position other than as a stakeholder.

[2] S.C. Const., art. VIII, § 7 states in pertinent part: "[t]he General Assembly shall provide by *general law* for the structure, organization, powers, duties, functions, and the responsibilites of counties . . . *No laws for a specific county shall be enacted . . .*" (emphasis added).

[3] S.C. Const., art. VIII, § 1 states that "[t]he powers possessed by all counties, cities, towns, and other political subdivisions at the effective date of this Constitution shall continue until changed in a manner provided by law."

the mandated systems of government, were set aside for counties. *See also, Richardson v. McCutchen,* 278 S.C. 117, 292 S.E. (2d) 787 (1982). The prohibition of Section 7 is applicable to special legislation dealing with districts created prior to the ratification of Article VIII or the amendment of prior special legislation. *Id.* Because Act No. 784 amended prior special legislation which created the Authority, the prohibition of Section 7 of Article VIII applies. The enactment of Act No. 784 is exactly the type of special legislation which is prohibited by Sections 1 and 7 of Article VIII of the South Carolina Constitution as it was not intended that after the ratification of the constitutional amendment, the General Assembly could repeatedly inject itself into local affairs.

Appellants argue that even if Act No. 784 constitutes special legislation, it is immune from the general prohibition of special legislation because it is transitional or remedial. We disagree. In *Duncan v. York County,* 267 S.C. 327, 228 S.E. (2d) 92 (1976), we held that Section 1 of Article VIII allowed the General Assembly to legislate to bring about an orderly transition to local home rule government, but that such authority was temporary and extended only so far as necessary to place Article VIII fully into operation. *See, Richardson v. McCutchen, supra. Van Fore v. Cooke,* 273 S.C. 136, 255 S.E. (2d) 339 (1979), however, limited transitional legislation to a "one shot" proposition so that the General Assembly could not repeatedly inject its will into the operation of county government. *Id.* In *Horry County v. Cooke,* 275 S.C. 19, 267 S.E. (2d) 82 (1980), this Court went a step further and stated that once a legally constituted government has become functional, the *Duncan* exception ends, thereby precluding any further special legislation. *See, Richardson v. McCutchen, supra.* Here, Act No. 784 in no way relates to the operative machinery necessary to implement a new form of government under Article VIII and thus, cannot be considered transitional legislation. Further, the local form of government, a public service district, which was organized long before the ratification of Article VIII, has remained in continuous and successful operation since that time and thus, Act No. 784 cannot be considered remedial legislation. Hence, the exceptions to the prohibition against special legislation are not applicable under these circumstances.

While Act No. 784 may well have been a good-faith attempt to promote home rule by placing control of the governing body of the Authority directly into the hands of the Newberry County Council rather than leaving it within those of the Newberry County Legislative Delegation, it still constitutes impermissible special legislation and is unconstitutional as it applies to Newberry County in the face of the South Carolina Constitution's prohibition against such legislation and this Court's past precedent. Cloaking Act No. 784 under the guise of being remedial or transitional legislation more than seventeen years after the ratification of Article VIII of the South Carolina Constitution and more than twenty years after the Authority has been in continuous and successful operation, does not remedy the legislature's disregard of the blatant constitutional prohibition against special legislation. Act No. 784 is nothing more than an attempt, albeit a good-faith one, by the Newberry County Legislative Delegation along with the rest of the General Assembly to do specifically for Newberry County what the other county legislative delegations and the General Assembly as a whole are unwilling to do collectively for all counties. We recognize that it would be an arduous task to draft legislation which is similar in content to Act No. 784, but applies generally to all counties, however, we encourage the General Assembly to exercise its authority and its responsibility in promoting home rule by divesting itself of the regulation and operation of county governments and by devolving such powers on all individual counties. Accordingly, the order of the trial judge declaring Act No. 784 to be violative of the South Carolina Constitution's prohibition against special legislation, is

Affirmed.

GREGORY, C.J., and CHANDLER and FINNEY, JJ., concur.

TOAL, J., dissenting in separate opinion.

TOAL, Justice, dissenting:

I respectfully dissent. The purpose of S.C. Constitution, Article VIII, §§ 1 and 7 was to establish "home rule" by greatly reducing the power of the legislature over county governments. As the majority notes, the Act in dispute was designed

in good faith to further that goal. The majority, however, relies on the Act's form over its function. Instead, I would relieve the legislature of the onerous, if not impossible, task of crafting general legislation that would place control of the Authority in the hands of the Newberry County Council.

In my opinion, Act 784 is constitutional as one-shot legislation under *Duncan v. County of York*, 267 S.C. 327, 228 S.E. (2d) 92 (1976). I am well aware that the *Duncan* exception was limited to the establishment of initial county governments by *Horry County v. Cooke*, 275 S.C. 19, 267 S.E. (2d) 82 (1980); however, the county government has never had legally constituted control over the Authority. It is my view, then, that the transfer of control accomplished by Act 784 constitutes the establishment of initial county government. I would, therefore, reverse.