### 2368

James E. BELL and Margaret V. Bell, Appellants v. EVENING POST PUBLISHING COMPANY, Andy Morgan, Ivan V. Anderson, Jr., and Evening Post and Courier, Defendants, of whom Evening Post Publishing Company is, Respondent.

(459 S.E. (2d) 315)

Court of Appeals

*I. Pernell "Pug" Starks;* and *Stephen L. Hudson,* Columbia, *for appellants.*

*John Kerr,* Charleston; and *Thomas D. Robertson,* Tulsa, OK, *for respondent.*

Submitted June 6, 1995.

Filed July 3, 1995.

GOOLSBY, Judge:

James and Margaret Bell brought this action against Evening Post Publishing Company (Evening Post), among others, alleging causes of action for intentional infliction of emotional distress, defamation, loss of consortium, and breach of contract. The trial court granted summary judgment in favor of Evening Post on the intentional infliction of emotional distress claim. At the close of the evidence, the trial court granted Evening Post's directed verdict motion and dismissed the case. James Bell (Bell) appeals from the trial court's grant of a directed verdict on his defamation claim. We affirm.[1]

In ruling on a motion for a directed verdict, the trial court must view the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party and should deny the motion where either the evidence yields more than one inference or the inferences are in doubt. *Strange v. South Carolina Dep't of Highways and Pub. Transp.,* 314 S.C. 427, 445 S.E. (2d) 439 (1994).

The evidence and its reasonable inferences, viewed in the

---

[1] Because oral argument would not aid the court in resolving the issues, we decide this case without oral argument.

light most favorable to Bell, are as follows: Evening Post is a South Carolina corporation that publishes a newspaper in Charleston, South Carolina. Evening Post employed Bell as a Zone Manager in the Circulation Department. Andy Morgan, acting manager of the Circulation Department, and Tom Eddins, manager of the Circulation Department, were Bell's supervisors. Sandra Holmes was a District Assistant with Evening Post and Bell was her immediate supervisor. Holmes informed Evening Post management that Bell had been sexually harassing her, that she and Bell had had a sexual relationship that she had broken off, and that Bell had threatened to fire her if she reported the affair. Holmes also reported Bell was having an affair with an Evening Post newspaper carrier, Yvette Meyers. Morgan and Eddins investigated these allegations, in part, by talking with Meyers at her home. Meyers testified Morgan and Eddins told her of the allegations against Bell and asked if she knew anything about them and she told them she did not. Meyers further testified Morgan and Eddins only told her that they were investigating accusations against Bell of sexual harassment and did not tell her Bell and Holmes were in fact having an affair. After a full investigation of the matter, Evening Post met with Bell and gave him an opportunity to respond to its findings. As a result of the investigation and the meeting, Evening Post terminated Bell's employment.

## I.

Bell argues the trial court erred in directing a verdict in favor of Evening Post on his defamation claim. He asserts the trial court erroneously held the alleged defamatory statements were protected by a qualified privilege.

Under South Carolina law, communications between servants, business associates, officers, or agents of the same corporation enjoy a qualified privilege. *Prentiss v. Nationwide Mut. Ins. Co.*, 265 S.C. 141, 181 S.E. (2d) 325 (1971); *Rodgers v. Wise*, 193 S.C. 5, 7 S.E. (2d) 517 (1940). The elements of this qualified privilege are as follows:

> [G]ood faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only. The

privilege arises from the necessity of full and unrestricted communication concerning a matter in which the parties have an interest or duty, and is not restricted within any narrow limits.

*Prentiss,* 256 S.C. at 147, 181 S.E. (2d) at 327.

Morgan and Eddins obviously qualify as either servants, business associates, officers, or agents of Evening Post. Also, there is no evidence in the record that Morgan and Eddins did not act in good faith in investigating Holmes's allegations of sexual harassment. Further, because sexual discrimination in the workplace is proscribed by law, Evening Post undoubtedly had an interest in investigating allegations of sexual harassment made against one of its supervisory personnel. S.C. Code Ann. § 1-13-80(a)(1) (1986). The record also reflects the alleged defamatory statements about which Bell complains occurred in a conversation between Morgan and Eddins and Meyers. During this conversation, Morgan and Eddins merely asked Meyers whether she had any knowledge of the truth or falsity of the sexual harassment allegations against Bell. These questions were properly limited in scope to determine whether sexual harassment was occurring in the Evening Post workplace and were properly directed at protecting Evening Post's interest in preventing sexual harassment by its supervisory personnel.

Moreover, there is no indication in the record that the time and manner of the communication was improper or that the communication was directed to an improper party. Morgan and Eddins conducted their conversation with Meyers in the privacy of Meyers's home, not at the workplace, where such a meeting may have raised the suspicions of other Evening Post employees. Also, Meyers was clearly an agent, if not a business associate, of Evening Post.[2]

---

[2] Bell argues Morgan and Eddins's communication with Meyers was not subject to a qualified privilege because Meyers was an "independent contractor" of Evening Post. Even if we accept this classification of Meyers, she nonetheless, as an Evening Post paper carrier, acted as at least an agent of Evening Post and is therefore within the class of persons protected by the qualified privilege. *See Love v. Gamble,* 316 S.C. 203, 209, 448 S.E. (2d) 876, 881 (Ct. App. 1994) ("An independent contractor can also be an agent; the two are not mutually exclusive.")

## II.

Bell also argues the trial court erred in not allowing the jury to decide whether Evening Post acted with malice and thereby exceeded the bounds of its qualified privilege. The evidence in this case, however, admits of only one reasonable inference, even when viewed in the light most favorable to Bell. That inference is, as we fully discussed in Issue I, that Evening Post acted well within the confines of its qualified privilege and did not act with malice, but only in a proper effort to protect its business interests and employees.

We therefore hold the trial court did not err in granting a directed verdict on Bell's defamation claim in favor of Evening Post.

Affirmed.

HOWELL, C.J., and HEARN, J., concur.